**Chester I. STAATS, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

**No. 96–3148.**

United States Court of Appeals, Federal Circuit.

Nov. 6, 1996.

Seth C. Berenzweig, Ritzert & Leyton, P.C., Fairfax, VA, argued, for petitioner. With him on the brief, was Peter S. Leyton.

Brian M. Reimer, Attorney, Legal Policy, U.S. Postal Service, Washington, DC, argued, for respondent. With him on the brief, were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Donald E. Kinner, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, and R. Andrew German, Managing Counsel, for Legal Policy, U.S. Postal Service.

Before LOURIE, CLEVENGER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

This case presents us once again with a claim arising from the 1992 Postal Service reorganization and the early retirements that many Postal Service employees took in connection with that reorganization. Petitioner Charles I. Staats was one of those who elected the early retirement option offered to him by the agency. He did so, he argues, because he regarded the alternative—the prospect of assignment to a "transition center," with an uncertain future to follow—to be unacceptable. Contending that his retirement was involuntary, Staats subsequently filed an appeal with the Merit Systems Protection Board seeking reinstatement. The Board denied relief, and Staats took this appeal, in which he contends that the Board should have granted him a hearing on his claim that he was coerced into retiring. We hold that the Board did not err in denying Staats a hearing on the issue of coercion, and we therefore affirm.

## I

In July 1992, the Postal Service announced plans to undertake a major reorganization. As part of the reorganization, the Postal Service offered many employees the option of early retirement with a lump-sum salary bonus. The deadline for accepting the early retirement option was initially October 2, 1992, but was later extended to November 20, 1992.

On November 2, 1992, prior to the extended deadline for electing the early retirement option, the Postal Service announced that employees who elected to remain with the agency would not be laid off and would enjoy indefinite "saved grade and frozen pay," i.e., even if they were assigned to lower graded jobs, they would retain their former grade and pay status.

Petitioner Staats accepted the early retirement option. He retired on November 20, 1992, with an annuity and a lump-sum bonus equal to six months' salary. Two years later, Staats sought reinstatement to the Postal Service by filing an appeal with the Merit Systems Protection Board. In his appeal, he contended that the Board had jurisdiction over his claim because his retirement was involuntary and thus was legally equivalent to a removal action. Because he was a "preference-eligible" employee and thus enjoyed a

statutory right to appeal from an adverse action such as removal, *see* 39 U.S.C. § 1005(a)(4)(A), Staats argued that his involuntary retirement was both appealable to the Board and unlawful on the merits.

An administrative judge initially dismissed Staats' appeal on the ground that it was untimely and that Staats had failed to demonstrate good cause to excuse his untimeliness. The full Board reversed that ruling, holding that Staats had demonstrated good cause for the belated filing of his appeal. In particular, the Board concluded that Staats had shown that he put the Postal Service on notice that he considered his retirement involuntary and thus triggered the Service's duty to notify Staats of his right to appeal to the Board. The Service's failure to provide him notice of that right, the Board held, constituted good cause for the late filing of his appeal.

The Board further noted that Staats' allegations "concerning his statements to his superiors, together with his allegations that individuals at the agency specifically misinformed him that the reorganization was not a [reduction in force] constitute a prima facie showing that his retirement was involuntary." For that reason, the Board concluded that Staats was entitled to a hearing on the question of voluntariness, which in turn would control the issue of the Board's jurisdiction. The Board accordingly directed the administrative judge to address Staats' claim that his retirement was involuntary.

On remand, the administrative judge first defined the scope of the hearing that she intended to conduct. Based on her reading of the Board's remand order, the administrative judge restricted the hearing to Staats' claim of involuntariness resulting from misinformation; she ruled that Staats' separate claim of involuntariness resulting from coercion was outside the scope of the hearing that the Board had directed her to conduct. In the alternative, the administrative judge ruled that Staats had failed to make a non-frivolous showing of involuntariness based on coercion. For that reason as well she concluded that he was not entitled to a hearing on his coercion claim.

The administrative judge then held an evidentiary hearing on the misinformation claim at which Staats and an agency official testified. Following the hearing, the administrative judge issued an opinion in which she rejected Staats' claim that the agency had given him misinformation that vitiated the voluntariness of his decision to retire. The administrative judge noted that Staats had admitted at the hearing that at the time he retired no action had been taken to demote him, and that he was aware of the agency's announced "no lay-offs" and "saved grade and frozen salary" policies. She added that Staats had testified that the reason he retired was "that his wife's health would have made it difficult for him to relocate and he did not have confidence in the job placement service provided at the agency's transition centers." Finally, she noted that the fact that Staats "perceived his situation to be an unpleasant one because he did not wish to relocate or be sent to a transition center, does not make his decision to retire rather than wait for agency action involuntary." Finding that Staats had failed to establish that his retirement was involuntary, the administrative judge dismissed his appeal for lack of jurisdiction. The full Board denied Staats' petition to review the administrative judge's decision.

## II

### A

In this court, Staats has not taken issue with the aspect of the Board's decision rejecting his claim that his retirement was the product of misinformation. Instead, he has confined his argument to the assertion that he was improperly denied a hearing on his claim of coercion. We reject that argument on the ground that Staats failed to make a non-frivolous showing that his retirement was the product of coercion, as that term is employed in this legal context, and that he was therefore not entitled to a hearing on that issue.

The governing background principles are these: A decision to resign or retire is presumed to be voluntary, and an employee who voluntarily retires has no right to

appeal to the Board; the Board assumes jurisdiction over an appeal by an employee who has resigned or retired only if the employee shows that his resignation or retirement was involuntary and thus tantamount to forced removal. *See Mueller v. United States Postal Serv.,* 76 F.3d 1198, 1201 (Fed. Cir.1996); *Braun v. Department of Veterans Affairs,* 50 F.3d 1005, 1007 (Fed.Cir.1995). In order to overcome the presumption of voluntariness and demonstrate that a resignation or retirement was involuntary, the employee must satisfy a demanding legal standard. The two principal grounds on which employees have sought to show that their resignations or retirements were involuntary are: (1) that the resignation or retirement was the product of misinformation or deception by the agency, *see Covington v. Department of Health & Human Servs.,* 750 F.2d 937, 942 (Fed.Cir.1984); and (2) that the resignation or retirement was the product of coercion by the agency, *see Dumas v. Merit Sys. Protection Bd.,* 789 F.2d 892, 894 (Fed. Cir.1986).

█ In order to establish involuntariness on the basis of coercion, an employee must show that the agency effectively imposed the terms of the employee's resignation or retirement, that the employee had no realistic alternative but to resign or retire, and that the employee's resignation or retirement was the result of improper acts by the agency. *Schultz v. United States Navy,* 810 F.2d 1133, 1136 (Fed.Cir.1987); *Roskos v. United States,* 213 Ct.Cl. 34, 549 F.2d 1386, 1389–90 (1977). An example of an involuntary resignation based on coercion is a resignation that is induced by a threat to take disciplinary action that the agency knows could not be substantiated. *See, e.g., Schultz v. United States Navy,* 810 F.2d at 1136; *Cosby v. United States,* 189 Ct.Cl. 528, 417 F.2d 1345, 1355 (1969); *Autera v. United States,* 182 Ct.Cl. 495, 389 F.2d 815, 817 (1968). The Board has also found retirements or resignations to be involuntary based on coercion when the agency has taken steps against an employee, not for any legitimate agency purpose but simply to force the employee to quit. *See, e.g., Caveney v. Office of Admin.,* 57 M.S.P.R. 667, 670 (1993); *Rayfield v. Department of Agric.,* 26 M.S.P.R.

244, 246 (1985). *See generally Roskos v. United States,* 549 F.2d at 1389–90.

█ As these examples make clear, the doctrine of coercive involuntariness is a narrow one. It does not apply to a case in which an employee decides to resign or retire because he does not want to accept a new assignment, a transfer, or other measures that the agency is authorized to adopt, even if those measures make continuation in the job so unpleasant for the employee that he feels that he has no realistic option but to leave. As this court has explained, the fact that an employee is faced with an unpleasant situation or that his choice is limited to two unattractive options does not make the employee's decision any less voluntary. *Covington v. Department of Health & Human Servs.,* 750 F.2d at 942; *Taylor v. United States,* 219 Ct.Cl. 86, 591 F.2d 688, 692 (1979). To adopt a different rule would enable an employee to defeat lawful agency action, such as a geographical transfer, by resigning in protest, appealing on the ground that the resignation was rendered involuntary by the hardship imposed by the transfer, and obtaining reinstatement (presumably with an immunity from the transfer) if the Board concluded that the employee retired unwillingly.

### B

Staats bases his appeal not on the merits of his coercion claim, but on a procedural issue—the denial of a purported statutory and constitutional right to a hearing on the coercion prong of his claim of involuntary retirement. This court's cases make clear, however, that neither the governing statute nor the Due Process Clause of the Fifth Amendment guarantees him a right to an evidentiary hearing on a question pertaining to the Board's jurisdiction.

█ The pertinent statute, 5 U.S.C. § 7701(a), grants employees a right to a hearing on claims falling within the Board's jurisdiction, but the statute does not provide for a hearing on the question whether the Board has jurisdiction in a particular case, and the Due Process Clause does not man-

date a hearing where the statute does not require that one be afforded. *See Manning v. Merit Sys. Protection Bd.*, 742 F.2d 1424, 1428 (Fed.Cir.1984) (no statutory right to an evidentiary hearing with respect to jurisdictional determinations); *Rose v. Department of Health & Human Servs.*, 721 F.2d 355, 357 (Fed.Cir.1983) (denial of a hearing on jurisdictional issues does not violate section 7701(a) or the Fifth Amendment). Instead, a hearing is required with respect to jurisdictional questions only if the employee makes a non-frivolous allegation that, if proved, would establish Board jurisdiction. Moreover, the requirement that an employee make a threshold non-frivolous allegation of jurisdiction in order to be entitled to a hearing applies even with respect to a jurisdictional issue such as involuntariness, which is closely tied to the merits of the underlying claim. *See Braun v. Department of Veterans Affairs*, 50 F.3d at 1008; *Dumas v. Merit Sys. Protection Bd.*, 789 F.2d at 894; *Burgess v. Merit Sys. Protection Bd.*, 758 F.2d 641, 643 (Fed.Cir.1985).

Staats argues that in its order remanding this case to the administrative judge, the full Board held that Staats had made a sufficient showing to call for a full hearing on involuntariness, and that it was therefore error for the administrative judge to limit the hearing to the issue of misinformation. In addressing Staats' proffer on the issue of involuntariness, however, the Board focused on his assertions regarding misrepresentation by the agency; the Board did not hold, or even suggest, that Staats had made a sufficient showing on his claim of coercion to require that the hearing before the administrative judge extend to that issue as well.

■ This court has recognized that an employee can make a factual showing sufficient to call for a hearing on misrepresentation-based involuntariness, while falling short of the showing necessary to mandate a hearing on coercion-based involuntariness. *See Dumas v. Merit Sys. Protection Bd.*, 789 F.2d at 894–95. The administrative judge therefore did not err in separately assessing the sufficiency of Staats' showing on the two prongs of his claim, misrepresentation and coercion, for purposes of determining the proper scope of the involuntariness hearing. Accordingly, while Staats argues his case in procedural terms, the central question in this case comes back to whether he made a sufficient showing before the administrative judge to require that she hold a hearing on the coercion issue.

■ On that question, we agree with the administrative judge that Staats' proffer of evidence before the Board failed to provide the basis for a non-frivolous claim of coercion-based involuntariness. To be sure, the Postal Service reorganization presented Staats with an unpleasant choice, one that was made particularly unpleasant in light of his personal circumstances. Nonetheless, the choice of resignation was not imposed on him, and he failed to show that the course of action that he expected the agency to adopt—assigning him to a transition center in anticipation of transfer to a new position within the reorganized agency—was one that the agency was unauthorized to put into effect.

Staats contends that the prospect of assignment to a transition center and later assignment to a new job in some new location with an uncertain future posed an unacceptable hardship and thus left him no real choice but to retire. In his testimony at the hearing before the administrative judge, Staats explained that he had interviewed for two positions within the newly organized agency, but had not been selected for either position. That meant that, in all likelihood, he would be sent to a transition center from which he would be assigned to another position. The transition center to which he expected to be sent was farther from his home than his prior workplace, and he was not optimistic that from there he would be assigned to a satisfactory position within the agency. Moreover, although at the time he retired the agency had guaranteed indefinite saved grade and pay for all Postal Service employees who were affected by the reorganization, Staats testified that he feared that the saved pay guarantee might be only temporary and that he might ultimately be laid off.

In addition to his testimony at the Board hearing, Staats set forth his claim of coercion in various documents of record in the case, including his initial appeal to the Board, his

response to the administrative judge's order requiring him to set forth the basis for Board jurisdiction, his supplemental brief and affidavit presented to the administrative judge, and his response to the agency's interrogatories. In each, he made essentially the same assertions with respect to his claim of coercion. For example, in his responses to the agency's interrogatories, Staats contended that his retirement was involuntary because his job was eliminated, he was not selected for a new job in the restructured organization, he was assigned to a transition center outside his normal commuting area, and he was unwilling to take the chance that he would be reassigned to a position outside the Washington, D.C., area, particularly in light of the burden that relocation would impose on his wife. In his briefs to the administrative judge, Staats added that he felt that the agency was encouraging his retirement "by indicating that there was great uncertainty as to his future career," that the agency caused him "to reasonably fear that he would be treated as an outcast through demotion and sent to a 'transition center' to be uprooted from his home," and that he was "reasonably concerned about the detrimental effects that would be placed on his career as a result of placement in lower grade positions, and feared being terminated." In his affidavit, moreover, Staats asserted that he "felt [he] was being compelled to make a decision [he] was unprepared to make."

The administrative judge correctly concluded that none of Staats' allegations constituted a legally sufficient, non-frivolous showing of coercion, as that term is used in this context. Staats' concerns about factors such as the likelihood of assignment to a transition center, the inconvenience of traveling to a transition center outside his normal commuting area, the prospect of subsequent relocation to a different area of the country, and the possibility that the "saved pay and grade" guarantee might not be permanent made the choice with which he was presented an unpleasant one, and perhaps justified his conclusion that his best option was to elect early retirement with the associated lump-sum salary payment. But Staats failed to show that the agency took, or threatened to take, steps that it was not legally entitled to take with respect to his future in the Postal Service.

■ Staats has not suggested that the agency targeted him personally and used the reorganization as a pretext for engineering his removal. Nor, contrary to Staats' contention, was he given inadequate time to consider his options. Time pressure to make a decision has, on occasion, provided the basis for a finding of involuntariness, but only when the agency has demanded that the employee make an immediate decision. *See Paroczay v. Hodges*, 297 F.2d 439, 441 (D.C.Cir.1961). *See generally Cosby v. United States*, 417 F.2d at 1355. When an employee has been given a period of time, such as two weeks, in which to consider his option, time pressure has not been regarded as a factor indicating involuntariness. *See Latham v. United States Postal Serv.*, 909 F.2d 500, 502 (Fed.Cir.1990). Here, Staats had several months to consider his alternatives, including several weeks after the Postal Service had announced that employees subject to reassignment in the reorganization would not have their pay or grade reduced. In any event, the November 20, 1992, deadline simply represented the last date on which Postal Service employees would be eligible for the benefits of the early retirement and lump-sum bonus program; the pressure that Staats felt to act by that date was the product of his desire not to forfeit those benefits, which the agency was not required to offer in the first place. The timing of the early retirement option thus did not give rise to legally cognizable coercion.

■ When an agency such as the Postal Service embarks on measures to reduce its size, the process will inevitably result in dislocation and hardship for some employees. If the measures are within the agency's authority to adopt, however, they cannot be converted into unlawful agency action by employee claims that the measures impose hardships in particular cases. The facts that Staats proffered as a basis for a hearing on

his coercion claim amply established the unpleasantness of his choice but were insufficient to support a legal finding of coercion. Under these circumstances, the administrative judge did not err in refusing to conduct an evidentiary hearing on Staats' claim that his retirement was the product of unlawful coercion by the Postal Service.

*AFFIRMED.*