Elizabeth J. SELPH, Petitioner,

v.

**DEPARTMENT OF DEFENSE,**
Respondent.

No. 01–3342.

United States Court of Appeals, Federal Circuit.

DECIDED: June 28, 2002.

Before SCHALL, BRYSON, and LINN, Circuit Judges.

## DECISION

PER CURIAM.

Elizabeth J. Selph appeals from a decision of the Merit Systems Protection Board, Docket No. SE–0752–99–0250–I–2, 90 M.S.P.R. 30, which dismissed her appeal for lack of jurisdiction because Ms. Selph had failed to demonstrate that her resignation was involuntary. We *affirm.*

## BACKGROUND

Ms. Selph was employed as a Teacher (Mixed Secondary) by the Department of Defense Education Activity ("DODEA") at Kinnick High School ("Kinnick") on the Yokosuka Naval Base in Japan. She taught there from August 13, 1995, until she submitted her resignation, which became effective on August 19, 1997. Ms. Selph's immediate supervisor at Kinnick was the principal, Bruce Davis. In early May 1997, unbeknownst to Ms. Selph, her husband sent an anonymous letter to Dr. Nancy Bresell, the Superintendent of the DODEA's Japan District. The letter contained allegations that Mr. Davis had sexually harassed eight women at Kinnick, including Ms. Selph, and requested an investigation. Dr. Bresell immediately contacted DODEA headquarters in the United States and requested assistance. DODEA dispatched EEO Specialist Carmen Martinez.

Between May 19 and May 23, 1997, Ms. Martinez interviewed 18 witnesses. Fifteen of the witnesses were teachers, including 13 females. The other three were administrators, including Mr. Davis and his supervisor, Dr. Scarlett Rehrig, the Assistant Supervisor to Dr. Bresell. Ms. Selph was out on sick leave and therefore was not interviewed. Six of the 13 female teachers said that Mr. Davis had behaved inappropriately toward them, including looking at and making remarks about their bodies and touching them in an improper fashion.

Dr. Bresell requested and accepted a preliminary oral report from Ms. Martinez. Ms. Martinez informed Dr. Bresell that based on what she had learned from the interviews, she believed that a hostile work environment existed at Kinnick and that Mr. Davis was responsible. Because of pledges of confidentiality given during the course of her investigation, however, Ms. Martinez told Dr. Bresell that the results of her investigation could not be used for disciplinary purposes.

Dr. Bresell requested that Dr. Rehrig begin a separate investigation immediately. Between May 23 and May 29, Dr. Bresell and Dr. Rehrig met with several witnesses, including Ms. Selph, whom they interviewed in Dr. Bresell's office on May 29. Dr. Bresell also called Mr. Davis and told him "to cease and desist." She warned him not to discuss the matter with anyone because it might lead to an impression of retaliation.

The administrative judge found that Dr. Rehrig spoke with Ms. Selph at least three times. Dr. Rehrig testified that at first Ms. Selph denied any relationship with Mr. Davis, but that she later alleged that Mr. Davis had forced himself upon her in the fall of 1996. Ms. Selph told Dr. Rehrig that Mr. Davis continued to seek her com-

pany and that she feared he would retaliate against her. The administrative judge found that Dr. Rehrig assured Ms. Selph that Mr. Davis would not be able to take any punitive action against her. Dr. Rehrig also offered to transfer Ms. Selph to another school in Yakota, Japan, a three and one-half to four hour drive from Kinnick.

The administrative judge found that Dr. Bresell told Ms. Selph not to fear reprisal from Mr. Davis and that Dr. Bresell assured Ms. Selph that Mr. Davis could not remove her without Dr. Bresell's concurrence. Dr. Bresell explained that she wanted to keep Ms. Selph in Japan and offered her the choice of remaining at Kinnick or transferring to Yakota. The administrative judge found that Dr. Bresell told Ms. Selph that whatever choice Ms. Selph made, Mr. Davis would no longer have any supervisory authority over her.

Dr. Bresell received Ms. Martinez's written report on June 4, 1997. As a result, the administrative judge found, Dr. Bresell placed the assistant principal in charge and ordered Mr. Davis to work at home and to stay away from school during regular hours. Dr. Bresell called Ms. Selph and informed her of those actions.

Classes ended the next week, and Ms. Selph returned to the United States for the summer. Although Dr. Bresell transferred to Guam and had essentially no further contact with Ms. Selph, the administrative judge found that Dr. Rehrig continued her investigation. By late July, she had concluded that Mr. Davis could not return to Kinnick and therefore transferred him to unstructured duties at the District Office on Yakota Air Base, located approximately 2.5 miles from Yakota High School.

The administrative judge found that on July 20, 1997, while still in the United States, Ms. Selph faxed a request for leave without pay ("LWOP") for the following school year, stating that a year off would allow her to heal completely from the sexual harassment she had endured. Her request stated that if DODEA denied her request for LWOP, she "would like to resign from my teaching position at Kinnick High School." The administrative judge found that headquarters personnel were the only people who could grant a request for more than three days of LWOP. Thus, Ms. Selph's request was transmitted to the Acting Chief of Employee Relations, Linda E.C. Councill.

The administrative judge found that Ms. Selph returned to Japan about August 3, went to Kinnick, and spoke with a secretary there. The secretary told her that Mr. Davis had moved into a bigger office and had resumed his duties as a principal. The administrative judge found that although Ms. Selph then called Dr. Rehrig to ask whether Mr. Davis had been disciplined, she did not ask Dr. Rehrig if it were 'true that Mr. Davis had been reinstated. Instead, Ms. Selph simply assumed that the secretary was correct. In fact, the secretary's information was false. The administrative judge found that Dr. Rehrig had already assigned a new principal to Kinnick.

On August 4, 1997, Ms. Selph asked Dr. Rehrig to call her and tell her what action was being taken against Mr. Davis. The administrative judge found that Dr. Rehrig called Ms. Selph the next day and told her that Mr. Davis would be detailed to the District Office at Yokota Air Base, at least three and one-half hours away from Kinnick. Although she could not tell Ms. Selph at the time because of Privacy Act concerns, the administrative judge found that Dr. Rehrig had decided that Mr. Davis would be reassigned to Okinawa if Ms. Selph decided to transfer to Yokota High School.

On August 6, 1997, the Department of the Navy issued a Protection Order and served it on Mr. Davis. The order prohibited Mr. Davis from having any contact with Ms. Selph, on pain of removal from Japan. The administrative judge found that Ms. Selph was aware that the Protection Order had been served on Mr. Davis before August 8, 1997.

The administrative judge found that Ms. Councill responded to Ms. Selph's request for LWOP in a letter dated August 8, 1997. In the letter, Ms. Councill explained that she was aware of Ms. Selph's complaint of sexual harassment. She wrote that the complaint would be addressed by DODEA officials, noted that Mr. Davis would be detailed away from Kinnick during the investigation, and encouraged Ms. Selph to share any information about the allegations with Dr. Rehrig so that DODEA could take appropriate action. The administrative judge found that Ms. Councill told Ms. Selph that the amount of LWOP she had requested could be granted only for specific reasons, including illness or disability. Ms. Councill identified specific information that Ms. Selph needed to provide in order for DODEA to grant her request. The administrative judge found that Ms. Councill also advised Ms. Selph that she might be eligible for LWOP pursuant to the Family and Medical Leave Act of 1993. The administrative judge found that Ms. Councill did not grant or deny Ms. Selph's request for LWOP, but instead advised her to provide additional supporting information.

On August 8, 1997, Ms. Selph submitted her resignation, effective August 19, 1997. In her letter of resignation, Ms. Selph stated "Since my request for Leave Without Pay was denied, I would like to resign my position with DODDS."

Before the Board, Ms. Selph alleged that DODEA had "constructively discharged" her by coercing her to resign. She argued that she had "no alternative but to resign" because of the intolerable working conditions created by Mr. Davis at Kinnick. Ms. Selph alleged that the DODEA refused to take prompt and effective action against Mr. Davis, refused to assign him away from her, and refused to allow her to take leave, so that she "had no alternative but to resign."

Reviewing the facts, the administrative judge found that upon receiving the allegation of sexual harassment, DODEA immediately began to investigate and remedy the situation at Kinnick. The administrative judge found that Dr. Bresell and Dr. Rehrig had given Ms. Selph assurances that Mr. Davis would not be able to retaliate against her and would not be in any position of authority over her. The administrative judge agreed that there was initially a hostile environment at Kinnick but that by August 8, 1997, when Ms. Selph submitted her resignation, a reasonable person would have recognized that the hostile environment no longer existed. The administrative judge found that a reasonable person would not have found the working conditions intolerable and would not have felt compelled to resign on August 8, 1997. The administrative judge therefore found that Ms. Selph's resignation was voluntary and that the Board did not have jurisdiction to hear her appeal.

Ms. Selph petitioned for review of the initial decision. The full Board denied review in a final order on July 20, 2001, and this appeal followed.

## DISCUSSION

A decision to resign from government service is presumed to be voluntary, and an employee who resigns voluntarily has no right to appeal to the Board. *Staats v. United States Postal Serv.*, 99 F.3d 1120,

1123–24 (Fed.Cir.1996). The petitioner bears the burden of showing that a resignation was involuntary. *Cruz v. Dep't of Navy,* 934 F.2d 1240, 1244 (Fed.Cir.1991). An employee may demonstrate the involuntariness of a resignation by showing that the resignation was the product of coercion by the agency. *Dumas v. Merit Sys. Prot. Bd.,* 789 F.2d 892, 894 (Fed.Cir.1986).

In order to demonstrate that a resignation was involuntary due to coercion, an employee must show that the agency effectively imposed the terms of the resignation, that the employee had no realistic alternative but to resign, and that the resignation was the result of improper acts by the agency. *Schultz v. United States Navy,* 810 F.2d 1133, 1136 (Fed.Cir.1987). The doctrine of coercive involuntariness does not apply whenever an employee is faced with an unpleasant situation or must choose between unattractive options, such as accepting a geographical transfer or resigning. *Staats,* 99 F.3d at 1124. To establish that a resignation was involuntary, the employee must demonstrate that a reasonable employee in the same situation would have felt coerced into resigning. *Middleton v. Dep't of Defense,* 185 F.3d 1374, 1379 (Fed.Cir.1999).

We uphold the Board's decision that Ms. Selph was not coerced by DODEA into resigning. The administrative judge found credible evidence showing that by August 8, 1997, when Ms. Selph submitted her resignation, Dr. Bresell and Dr. Rehrig had: (1) assured Ms. Selph that Mr. Davis would not be in any position of authority over her; (2) repeatedly assured Ms. Selph that Mr. Davis would not be able to retaliate against her; and (3) offered Ms. Selph a choice of positions so that she would not be at the same school as Mr. Davis for the coming school year. In addition, the administrative judge found that Ms. Selph knew that Mr. Davis was subject to a Military Protection Order that barred him from having any contact whatsoever with her. The evidence summarized by the administrative judge was sufficient to support the administrative judge's conclusion that Ms. Selph was no longer subjected to a hostile working environment at the time she resigned her position. Because there is sufficient evidence in the record to show that Ms. Selph's resignation was voluntary, we affirm the Board's decision.