# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SALVADORE GENDUSA,[1]

       Appellant,

      v.

DEPARTMENT OF VETERANS
  AFFAIRS,

       Agency.

DOCKET NUMBER
DA-0752-14-0444-I-1

DATE: June 8, 2015

## THIS FINAL ORDER IS NONPRECEDENTIAL[2]

Terrence J. Johns, New Orleans, Louisiana, for the appellant.

Brandi M. Powell, New Orleans, Louisiana, for the agency.

---

[1] The appellant died on December 29, 2014, before the initial decision was issued. The appellant's spouse filed a petition for review, followed by a timely motion for the Board to accept her as a substitute party. Petition for Review (PFR ) File, Tabs 1, 4-5, 7. We grant her motion. The appellant's interests were not extinguished by his death. *See* 5 C.F.R. § 1201.35(a). Although he cannot be reinstated to employment, issues such as back pay for the period between his resignation and his death and attorney fees are either pending or may arise from this appeal. *See Estate of Kravitz v. Department of the Navy*, 110 M.S.P.R. 97, ¶ 2 n.1 (2008). Because the appellant's spouse has been substituted in this matter, we refer to all assertions and arguments made by her as made by "the appellant."

[2] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1 The appellant has filed a petition for review of the initial decision, which dismissed for lack of jurisdiction the appellant's constructive removal appeal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2 The appellant filed this appeal after resigning from the agency, effective February 15, 2013. Initial Appeal File (IAF), Tab 1. He alleged that his resignation was involuntary and thus a constructive removal. *Id.* After a hearing, the administrative judge dismissed the appeal for lack of jurisdiction. IAF, Tab 30, Initial Decision (ID) at 1, 11.

¶3 On review, the appellant generally asserts that the administrative judge "misrepresented the evidence and testimony." PFR File, Tab 1 at 4. However, the administrative judge correctly found that the appeal is not within the Board's

jurisdiction. The Board's jurisdiction is limited to matters over which it has been given jurisdiction by law, rule, or regulation. *Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985). The Board does not have jurisdiction over all actions that are alleged to be incorrect. *Weyman v. Department of Justice*, 58 M.S.P.R. 509, 512 (1993). An appellant bears the burden of proving by preponderant evidence that his appeal is within the Board's jurisdiction. 5 C.F.R. § 1201.56(a)(2)(i).

¶4 An employee-initiated action such as a resignation or retirement is presumed to be voluntary and, as such, outside of the Board's jurisdiction. *Putnam v. Department of Homeland Security*, 121 M.S.P.R. 532, ¶ 21 (2014). A resignation that is involuntary, however, is equivalent to a forced removal and falls within the Board's jurisdiction. *Id.* An appellant who claims that his retirement was involuntary may rebut the presumption of voluntariness in a variety of ways, including by showing that the retirement was the result of intolerable working conditions. *Id.* Here, the appellant was a Clerk, GS-0303-03, with the Police Service at the agency's New Orleans Veterans Affairs Medical Center. IAF, Tab 1 at 2, 7, Tab 10 at 46, 63. He alleged that the facility director, J.C., met with him in the presence of his union representative on February 15, 2013. IAF, Tab 1 at 7. He alleged that she advised him that the agency no longer needed his services and that he had no choice but to retire or resign his position. *Id.* The appellant asserted that he had been harassed and discriminated against for more than a year by management officials, including R.K., chief of the Police Service. IAF, Tab 4 at 4. He explained that agency managers repeatedly told him that he was too old to be working. *Id.* He further explained that the union had to force management to allow him to attend treatment appointments for his service-connected post-traumatic stress disorder (PTSD) and, on several occasions, he was denied opportunities to see his physician. *Id.* The appellant additionally asserted that he suffered a mild heart attack on September 10, 2012,

after receiving a September 5, 2012 decision letter informing him of his removal for conduct unbecoming a federal employee. *Id.*; *see* IAF, Tab 10 at 60-62.

¶5 On September 19, 2012, management offered the appellant an abeyance agreement in lieu of removal.[3] IAF, Tab 10 at 56-59. He was transferred to the medical center's Ambulatory Procedure Unit to work as a Medical Support Assistant, GS-0679-03, and he agreed not to incur any validated patient complaints within the 1-year term of the agreement. *Id.* at 56-57. The appellant alleged that, on December 20, 2012, management denied his request for light duty to accommodate knee injuries he sustained in military combat. IAF, Tab 4 at 4. Three patient complaints were filed against the appellant, and, though he contended that they lacked merit, management validated them. *Id.*; *see* IAF, Tab 10 at 48-49, 52-55. Accordingly, the agency found that he had breached the agreement and placed him on paid administrative leave effective January 23, 2013. IAF, Tab 10 at 48-51. During this time, the agency's Office of Inspector General investigated threats that the appellant allegedly made on R.K.'s life. IAF, Tab 4 at 4; *see* IAF, Tab 16, Subtabs C8, C22.

¶6 The appellant alleged that he met with J.C. on February 15, 2013, accompanied by a union representative. IAF, Tab 4 at 4. He averred that J.C. "seemed to indicate that she didn't have enough evidence to substantiate any of the charges levied against [him]," but that neither she nor R.K. wanted him back, "so he would have no choice but to resign his position." *Id.* He asserted that he accompanied his union representative to Human Resources, where a Supervisory Human Resources Specialist, D.R., prepared his resignation letter. *Id.*; *see* IAF,

---

[3] The agreement provided, in part, that the agency would hold the September 5, 2012 removal decision in abeyance for 1 year from the date it was executed. IAF, Tab 10 at 56-57. The appellant agreed that any validated patient complaint received during the 1-year period following execution of the agreement would be considered a breach of the agreement that would effectuate his removal. *Id.* at 57. He also agreed to waive his right to appeal the September 5, 2012 removal decision. *Id.*

Tab 10 at 47. He asserted that he believed at the time that he had to sign the letter but later learned that his resignation was unnecessary. IAF, Tab 4 at 4.

¶7 On May 14, 2013, the appellant filed an equal employment opportunity (EEO) complaint alleging that his resignation was involuntary and claiming several bases for discrimination.[4] IAF, Tab 1 at 7, Tab 10 at 40-44, Tab 16, Subtab A4. This appeal arose from the mixed-case elements of his complaint. *See* IAF, Tab 10 at 43-45, Tab 16. The Report of Investigation includes interrogatories and documentary evidence showing that the agency was unaware that the appellant had requested any accommodation.[5] *See* IAF, Tab 16, Subtabs B2 at 6, B4 at 3, B5 at 4, C17 at 1, 4-5.

¶8 Although the appellant proffered D.R. as a witness to "speak to whether [he] was forced" to resign, *see* IAF, Tab 23, she testified that she did not prepare the resignation letter and that he did not sign it in front of her. Hearing Compact Disc. Instead, she testified that A.F., the appellant's union representative, told her that she would prepare the letter and witness his signature. *Id.* D.R. testified that she received the signed letter by email from A.F. *Id.* D.R. also testified that J.C. asked her to assist the appellant with preparing his retirement application. *Id.* In the process, she discovered that he was not yet eligible to retire. *Id.* She testified that she told A.F. and the appellant that he was not yet eligible to retire and researched whether his military service could be considered in determining his eligibility. *Id.*

---

[4] The appellant claimed discrimination based on age (70), race (Caucasian), color (olive), national origin (Sicilian and German), mental disability (PTSD), physical disability (a heart condition and injuries sustained during the Korean War). IAF, Tab 16, Subtab A4. He claimed that: (1) he was subjected to ongoing harassment and ridicule regarding his age; (2) he resigned involuntarily after falsely being accused of misconduct; and (3) the agency failed to accommodate his physical condition when it required him to transport patients weighing up to 300 pounds. *Id.*

[5] The appellant also did not file a medical release that would have allowed his medical information to be used in the EEO proceeding. *See* IAF, Tab 16, Subtab C19 at 2.

¶9     An appellant may prove a claim of involuntary resignation by showing that his working conditions were made so difficult by the agency that a reasonable person in his position would have felt compelled to resign, and his resignation was the result of improper acts by the agency. *Axsom v. Department of Veterans Affairs*, 110 M.S.P.R. 605, ¶ 12 (2009); *see also Miller v. Department of Defense*, 85 M.S.P.R. 310 (2000). As the U.S. Court of Appeals for the Federal Circuit has observed, "The doctrine of coercive involuntariness is a narrow one, requiring that the employee satisfy a demanding legal standard." *Conforto v. Merit Systems Protection Board*, 713 F.3d 1111, 1121 (Fed. Cir. 2013). In *Conforto*, the court further stated, "An employee's dissatisfaction with the options that an agency has made available to him is not sufficient to render his decision to resign or retire involuntary." *Id.* Accordingly, the court explained, "coerced involuntariness does not apply if the employee resigns or retires because he does not like agency decisions such as 'a new assignment, a transfer, or other measures that the agency is authorized to adopt, even if those measures make continuation in the job so unpleasant . . . that he feels he has no realistic option but to leave.'" *Id.* at 1121-22 (quoting *Staats v. U.S. Postal Service*, 99 F.3d 1120, 1124 (Fed. Cir. 1996)). Moreover, the coercion must arise from improper acts by the agency. *Id.* at 1122.

¶10    It is undisputed that the appellant was serving under an abeyance agreement in lieu of removal for an earlier disciplinary action. *See* IAF, Tab 10 at 56-59. It is also undisputed that he was notified that he was in breach of the agreement and that he subsequently signed a resignation letter. *Id.* at 47-51. Based in part on her assessments of witness credibility, *see Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458-62 (1987) (factors to be considered in assessing a witness's credibility), the administrative judge found D.R.'s testimony regarding the circumstances of his resignation to be more credible than that of the appellant himself. ID at 9-10. Notably, the appellant withdrew his request for A.F. to testify at his hearing. IAF, Tab 21 at 2. The administrative judge thus properly

credited D.R.'s version of events. ID at 10. The administrative judge also credited the testimony of R.K. and K.R., a Captain in the Police Service, regarding harassment that the appellant allegedly experienced while assigned to the Police Service. *See id.*. The administrative judge found it undisputed that the appellant did not have contact with these witnesses after October 2012 and they were not immediately involved in the events leading to his resignation. *Id.*; *see* IAF, Tab 16, Subtabs B3 at 4-11, B5 at 4-13. The administrative judge thus properly found that, although the appellant experienced difficulties, he did not show that his working conditions were made so difficult by the agency that a reasonable person in his position would have been compelled to resign. ID at 11. Likewise, the record does not suggest that the agency acted improperly.

¶11    An employee is not guaranteed a working environment free of stress. Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult and unpleasant working conditions are generally not so intolerable as to compel a reasonable person to resign or retire. *Miller*, 85 M.S.P.R. 310, ¶ 32. Although the appellant may have learned that he had incurred validated patient complaints and thus breached the abeyance agreement, credible testimony showed that his decision to resign was made with his union representative. Although he may have been under investigation for allegedly making threatening statements, it is well-settled that the fact that an employee is confronted with the unpleasant choice of resigning or facing disciplinary action does not affect the voluntariness of his ultimate choice to resign or retire. *See Schultz v. United States Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987). The administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions, dismissing the appeal for lack of jurisdiction. *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987). Because the appeal was dismissed for lack of primary jurisdiction, the administrative judge properly declined to consider the appellant's mixed-case claims of

discrimination.  *See* ID at 11; *see also Wren v. Department of the Army*, 2 M.S.P.R. 1, 2 (1980), *aff'd*, 681 F.2d 867, 871-73 (D.C. Cir. 1982).

¶12        Finally, the appellant argues that the administrative judge did not allow the appellant to call J.C. as a witness.  PFR File, Tab 1 at 3.  The agency representative indicated in the prehearing discussion that J.C. had left the service but that the agency was considering issuing a subpoena for her testimony.  *Id.*; *see* IAF, Tab 21 at 2.  The agency ultimately declined to do so.  The appellant alleges that the administrative judge "rudely" told the appellant's representative that he could pay to subpoena J.C., but "acted . . . as though it was too expensive."  PFR File, Tab 1 at 3.  The appellant has not shown, however, that the administrative judge denied the request to issue a subpoena for J.C.'s testimony.  Accordingly, we find that the appellant's argument is unavailing.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in

Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your appeal to the Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                          _____
                                        William D. Spencer
                                        Clerk of the Board

Washington, D.C.