NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DONATUS U. UNARA,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

**DEPARTMENT OF VETERANS AFFAIRS,**
*Intervenor*

---

2016-1417

---

Petition for review of the Merit Systems Protection Board in No. CH-3443-15-0404-I-1.

---

Decided: August 4, 2016

---

DONATUS U. UNARA, Ypsilanti, MI, pro se.

KATRINA LEDERER, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, for respondent. Also represented by BRYAN G. POLISUK.

REBECCA SARAH KRUSER, Commercial Litigation Branch, Civil Division, United States Department of

Justice, Washington, DC, for intervenor. Also represented by REGINALD T. BLADES, JR., ROBERT E. KIRSCHMAN, JR., BENJAMIN C. MIZER.

———————————

Before NEWMAN, LOURIE, and O'MALLEY, *Circuit Judges*.

PER CURIAM.

Donatus U. Unara ("Unara") appeals from the final order of the Merit Systems Protection Board ("the Board") dismissing his appeal for lack of jurisdiction. *See Unara v. Dep't of Veterans Affairs*, No. CH-3443-15-0404-I-1 (M.S.P.B. Nov. 4, 2015) ("*Final Order*"); *Unara v. Dep't of Veterans Affairs*, No. CH-3443-15-0404-I-1 (M.S.P.B. June 30, 2015) ("*Initial Decision*"). Because the Board correctly concluded that it lacked jurisdiction over Unara's appeal, we *affirm*.

## BACKGROUND

Unara was previously employed as a Medical Technologist, GS-9, at the Harry S. Truman Medical Center of the Department of Veterans Affairs ("the Agency"). *Initial Decision* at 1. After not being selected for a GS-10 vacancy in April 2014, Unara filed a formal Equal Employment Opportunity ("EEO") complaint of age and race discrimination at the Agency's Office of Resolution Management, alleging that a series of events created a hostile work environment beginning in July 2013. *Id.* at 1, 4–6. He detailed incidents of not being provided appropriate training; unequal treatment of his compensation request; a manager's hostile response to his report of a workplace problem; and his nonselection for the GS-10 position. Intervenor's App. ("I.A.") 50.

In September 2014, Unara suffered a stroke at work and was hospitalized. *Initial Decision* at 6. Unara subsequently amended his EEO complaint to assert allegations of harassing actions by the Agency after his complaint

was filed, including scheduling meetings for times when he was scheduled to be off-duty; falsely accusing him of being unresponsive to managerial requests and disruptive in the workplace; issuing him a written counseling; assigning him additional job duties; taking no action to ensure that his assistant was helping him perform his job duties; and calling him while he was hospitalized to request that he return to work. I.A. 50–51.

While on medical leave, he received a letter from the Agency explaining his responsibility to submit medical documentation to support his continued leave of absence. I.A. 37. Instead of submitting such documentation, Unara resigned from his position on November 17, 2014. *Final Order* at 2. In January 2015, Unara again amended his EEO complaint, adding an allegation that the hostile work environment forced him to resign. *Id.*

The Office of Resolution Management accepted his forced resignation claim for investigation as independently actionable, making it a "mixed case" appeal. *Id.*; I.A. 51–52. As a result, the investigation and a final agency decision were required to be completed within 120 days of the amendment being accepted. *Final Order* at 2. Before that period ended, however, the Office sent Unara a notice with a copy of the investigative file to inform him of his available options for processing his complaint, including requesting a final agency decision within 30 days. *Id.* at 3; I.A. 54–55. Instead, Unara appealed to the Board. *Final Order* at 2–3. The Agency ultimately did not issue a final decision. *See id.* at 4–5 & n.4.

The Board's administrative judge ("AJ") issued an acknowledgment order explaining to Unara that it lacks jurisdiction over presumptively voluntary actions such as resignations, and advised him that his appeal would be dismissed unless he amended his petition to allege that his resignation was the result of duress, coercion, or improper acts by the Agency. *Final Order* at 3–4; I.A. 28–

29.  In response, Unara filed a submission repeating his allegations of how the Agency forced him to resign by verbally harassing him and creating a hostile work environment as set forth in his EEO complaint. *Final Order* at 4; I.A. 33–35.

The AJ subsequently issued an initial decision dismissing the appeal for lack of jurisdiction without a hearing, concluding that Unara failed to make any non-frivolous allegation that his resignation was involuntary and thus failed to establish the Board's jurisdiction over his appeal. *See Final Order* at 5; *Initial Decision* at 8–9. Unara petitioned for review by the full Board, which subsequently issued a final order denying the petition and affirming the AJ's initial decision to dismiss the appeal. *Final Order* at 2.

Unara timely appealed from the Board's final order. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must affirm the Board's decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review a determination of the Board's jurisdiction *de novo* as a question of law, and review underlying factual findings for substantial evidence. *See Parrott v. Merit Sys. Prot. Bd.*, 519 F.3d 1328, 1334 (Fed. Cir. 2008).

"A decision to resign or retire is presumed to be voluntary, and an employee who voluntarily retires has no right to appeal to the Board; the Board assumes jurisdiction over an appeal by an employee who has resigned or retired only if the employee shows that his resignation or retirement was involuntary and thus tantamount to forced removal." *Staats v. U.S. Postal Serv.*, 99 F.3d 1120,

1123–24 (Fed. Cir. 1996); *see also Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1328 (Fed. Cir. 2006) (en banc); *Cruz v. Dep't of Navy*, 934 F.2d 1240, 1248 (Fed. Cir. 1991) (en banc). The employee is only entitled to a hearing—at which point jurisdiction must be shown by a preponderance of the evidence, *Garcia*, 437 F.3d at 1344—if nonfrivolous allegations are made that the resignation was "the product of coercion by the agency." *Conforto v. Merit Sys. Prot. Bd.*, 713 F.3d 1111, 1121 (Fed. Cir. 2013) (citing *Dumas v. Merit Sys. Prot. Bd.*, 789 F.2d 892, 894 (Fed. Cir. 1986).

"The test for involuntariness is objective," *id.*, and "the doctrine of coercive involuntariness is a narrow one," *Staats*, 99 F.3d at 1124. To overcome the presumption that a resignation was voluntary, an employee must show that "the agency effectively imposed the terms of the employee's resignation"; that the employee "had no realistic alternative but to resign"; and that the resignation was "the result of *improper* acts by the agency." *Garcia*, 437 F.3d at 1329 (quoting *Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1341 (Fed. Cir. 2001)) (emphasis added). However, merely disliking "measures that the agency is authorized to adopt, even if those measures make continuation in the job so unpleasant . . . that he feels that he has no realistic option but to leave," is insufficient. *Conforto*, 713 F.3d at 1121–22.

Unara argues that the Board did not take into account the facts presented regarding the incidents of discrimination that he experienced, which made his working conditions so intolerable that the Agency's actions constituted a constructive removal. Pet'r's Br. 2. He also asserts that the Board inadequately dealt with his motions to compel, in which he sought discovery for his EEO claims. *Id.* Unara further contends that the Board failed to consider the improper acts of the Agency in interfering with his medical leave by sending him a letter

that demanded his resignation before the amount of leave that he was entitled to had ended. *Id.*

The government responds that the Board properly considered all relevant facts and correctly concluded that it lacked jurisdiction over Unara's appeal. Resp't's Br. 10. The government notes that because the Board only considered the jurisdictional allegation, it did not evaluate the merits of Unara's appeal. *Id.* Specifically, the government asserts that the Board correctly considered, under the totality of the circumstances, whether Unara's working conditions were objectively intolerable such that his resignation was involuntary. *Id.* at 12. The government argues that the Board found that even assuming his allegations of the hostile work environment were true, they would not have compelled a reasonable person to resign because several of the issues could have been resolved in other ways, they only existed for short periods of time, or they were actions that the Agency was authorized to undertake. *Id.* at 13–14. The government also contends that Unara's claim that the Agency improperly applied or calculated his medical leave time was not before the Board and is thus waived. *Id.* at 14.

The Agency, as intervenor in the present appeal, similarly asserts that the Board examined all of the facts presented and addressed whether they evidenced improper agency actions and how they would affect a reasonable person in Unara's position. Intervenor's Br. 15, 17–18. The Agency further responds that Unara did not identify any specific facts that the Board failed to consider. The Agency also contends that the Board properly treated Unara's motions to compel because they did not comply with the Board's regulations, and thus the AJ's failure to rule on the first motion was not prejudicial. *Id.* at 15–16, 23. The Agency further asserts that the full Board's rejection of the second motion was also proper. *Id.* at 16–17, 23. The Agency lastly agrees with the government that Unara waived the argument that the letter that he

received during his medical leave forced him to resign, and moreover asserts that the letter on its face did not demand his resignation. *Id.* at 24–25.

We agree that the Board did not err in dismissing Unara's appeal for lack of jurisdiction. The Board considered his assertions of harassment and discrimination and found that, although the described incidents showed "an unpleasant and inconvenient working environment," none of the alleged actions were improper or would suffice to compel a reasonable person to resign. The Board analyzed the individual allegations and found them to be legitimate Agency decisions that it is authorized to make, *see Staats*, 99 F.3d at 1124; or otherwise not so oppressive as to force Unara's resignation. There were reasonable explanations for the Agency's actions or realistic alternatives to resigning. *See Garcia*, 437 F.3d at 1329; *Conforto*, 713 F.3d at 1122. The Board also considered Unara's arguments concerning the motions to compel and found that any alleged errors were not prejudicial and would not have changed the outcome of the appeal. *Final Order* at 6 n.7. Moreover, we do not find anything in the record indicating that Unara raised to the Board the issue of the letter received during his medical leave, as he instead focused on his manager's statements to him shortly after his stroke; regardless, the letter does not support a non-frivolous allegation of involuntary resignation.

The Board thus properly considered the totality of the circumstances and found that Unara did not demonstrate that any Agency actions would have effected a constructive removal. Accordingly, Unara failed to meet his burden to nonfrivolously allege that his resignation was objectively coerced and thus involuntary. Without such allegations, the Board correctly held that it lacked jurisdiction over Unara's appeal.

We have considered Unara's remaining arguments, but find them unpersuasive. For the foregoing reasons,

we affirm the Board's decision dismissing Unara's appeal for lack of jurisdiction.

**AFFIRMED**

Costs

No costs.