NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**DENNIS C. MCKEOWN,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

_____

2020-1062

_____

Petition for review of the Merit Systems Protection Board in No. SF-0752-19-0429-I-1.

_____

Decided: April 16, 2020

_____

DENNIS C. MCKEOWN, Richmond, CA, pro se.

DEANNA SCHABACKER, Office of General Counsel, United States Merit Systems Protection Board, Washington, DC, for respondent. Also represented by TRISTAN LEAVITT, KATHERINE MICHELLE SMITH.

_____

Before LOURIE, WALLACH, and HUGHES, *Circuit Judges.*

PER CURIAM.

Petitioner Dennis C. McKeown seeks review of a decision of the Merit Systems Protection Board dismissing his appeal for lack of jurisdiction because Mr. McKeown resigned from federal employment. The Board lacks jurisdiction over a resignation unless the petitioner can show it was involuntary. Mr. McKeown claims that he resigned involuntarily due to intolerable work conditions. Because the Administrative Judge properly concluded that Mr. McKeown failed to present nonfrivolous allegations of involuntary resignation to establish jurisdiction, we affirm the Board's decision.

I

Mr. McKeown was a Supervisory Emergency Management Program Specialist within the Response Division, Region IX, of the Federal Emergency Management Agency, a section of the Department of Homeland Security. He had twenty-two years of service with FEMA before his resignation in 2019. During the time relevant to this appeal, his job duties included "preparing FEMA responses to natural disasters" in Region IX (Arizona, California, Hawaii, Nevada, & the Pacific Islands). *McKeown v. Dep't of Homeland Sec.*, No. SF-0752-19-0429-I-1, slip op. at 2 (M.S.P.B. July 30, 2019) (*Board Decision*).

Starting in 2016, Mr. McKeown reported to FEMA management that he believed a contractor was billing FEMA inappropriately, first for incomplete work on a typhoon project and later for duplicative and out-of-scope work on an earthquake project. He also made whistleblower complaints to the DHS Office of Inspector General in November 2018 and March 2019. According to the Administrative Judge, the November 2018 "disclosures are the basis of [Mr. McKeown's] whistleblower retaliation defense in his appeal of the agency's decision to place him on furlough in December 2018 during the partial government shutdown." *Board Decision* at 3 n.4. DHS OIG declined to investigate the March 2019 complaint. Because of his

belief regarding the out-of-scope work on the earthquake project, Mr. McKeown repeatedly tried unsuccessfully to determine who approved the work and so refused to complete briefings and presentations for FEMA administrators. He also participated in the investigation of a colleague's Equal Employment Opportunity (EEO) complaint.

According to Mr. McKeown, his supervisors retaliated against him for these activities over the next three years by creating intolerable working conditions through "harassment, isolation from coworkers, removal of job duties, denial of merit system due process, and an unethically coercive requirement to approve [contractor] tasks outside of contract scope of work deliverables." Resp. App. 27.[1] During this time, Mr. McKeown received a five-day suspension for conduct unbecoming and failure to follow instructions and an "unacceptable" rating on his 2018 performance review. In May 2019, Mr. McKeown resigned, stating that the agency's behavior towards him, including "attempts to force [him] to take responsibility for" the contractor's allegedly out-of-scope work, "placed [him] in an impossible ethical position." Resp. App. 74.

Mr. McKeown appealed to the Board, claiming that his resignation was involuntary due to the intolerable work conditions, and requested a hearing. Because resignations are presumed voluntary and the Board has no jurisdiction over voluntary resignations, *Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1340 (Fed. Cir. 2001), the Administrative Judge required Mr. McKeown to make nonfrivolous allegations that he resigned involuntarily due to duress, coercion, or

---

[1]    Both parties filed appendices with their briefs. "Pet. App." refers to the Appendix included with the Petitioner's brief. "Resp. App." refers to the Supplemental Appendix included with the Respondent's brief.

misrepresentation by the agency before receiving a hearing. *Board Decision* at 1−4. Mr. McKeown alleged several ways in which FEMA management retaliated against him: unfairly assessing his performance, eliminating and re-assigning key work responsibilities, and interfering in his relationships with co-workers, subordinate employees, and partners.

The Administrative Judge held that Mr. McKeown failed to state a non-frivolous allegation that his resignation was involuntary and dismissed his case for lack of jurisdiction. *Board Decision* at 12. She acknowledged that the "allegations illustrate significant disagreements with [Mr. McKeown's supervisor] about work assignments, a feeling of being unfairly evaluated, and a challenging work environment" as well as Mr. McKeown's "significant personal reactions to each of the alleged instances of harassment." *Id.* at 11−12. However, she found Mr. McKeown provided insufficient specific examples for each allegation and that there was reason for the agency to take the actions it had. *E.g., id.* at 9 (reasoning that "the agency had legitimate reasons to reassign the work when the appellant did not complete it" and that Mr. McKeown's supervisor "separated" him from a subordinate "because of a report that the appellant harassed" the subordinate). The allegations therefore did not demonstrate an objectively intolerable work environment that would "compel a reasonable person to resign." *Id.* at 8, 11. The Administrative Judge's initial decision became the final decision of the Board on September 3, 2019.

Mr. McKeown timely appealed. We have jurisdiction under 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9).

## II

### A

The Board lacks jurisdiction over voluntary resignations or retirements. *Shoaf*, 260 F.3d at 1341. The petitioner therefore has the burden of showing that "his or her resignation or retirement was involuntary and thus tantamount to forced removal." *Trinkl v. Merit Sys. Prot. Bd.*, 727 F. App'x 1007, 1009 (Fed. Cir. 2018). *Cf. Terban v. Dep't of Energy*, 216 F.3d 1021, 1024 (Fed. Cir. 2000).

One way for the petitioner to rebut the presumption of voluntariness is to show that the resignation was the product of coercive acts by the agency, such as intolerable working conditions. *Shoaf*, 260 F.3d at 1341; *Staats v. U.S. Postal Serv.*, 99 F.3d 1120, 1124 (Fed. Cir. 1996). But "the doctrine of coercive involuntariness is a narrow one." *Staats*, 99 F.3d at 1124 (describing limited scenarios where a resignation was involuntary, like when it was "induced by a threat to take disciplinary action that the agency knows could not be substantiated" or where the agency attempts to force the employee to quit, without "any legitimate agency purpose"). We objectively consider the totality of the circumstances to determine whether "a reasonable employee confronted with the same circumstance would feel coerced into resigning." *Shoaf*, 260 F.3d at 1342 (quoting *Middleton v. Dep't of Defense*, 185 F.3d 1374, 1379 (Fed. Cir. 1999)).

"Whether the [B]oard had jurisdiction to adjudicate a case is a question of law, which we review *de novo*." *Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995). We review the Board's factual findings affecting the jurisdictional inquiry for substantial evidence. *Lentz v. Merit Sys. Prot. Bd.*, 876 F.3d 1380, 1384 (Fed. Cir. 2017).

### B

On appeal, Mr. McKeown argues that the Administrative Judge committed several errors in her jurisdictional

determination:  (1) failing to consider the "potential legal jeopardy [Mr. McKeown faced] for participation in fraud" had he not resigned, Pet. Br. 5–8; (2) determining that no one forced him to place his name on assignments, particularly the earthquake project briefing, and finding that the earthquake project briefing was not a condition of employment; and (3) ignoring the "pattern of retaliation against [him]" for reporting what he believed to be fraudulent billing for work outside of the earthquake project's contract scope, Pet. Br. 4.  We reject these arguments.

First, though Mr. McKeown now argues that a reasonable employee faced with potential personal liability for fraud would resign rather than simply "stand and fight," Pet. Br. 5–6, 10–11; Mem. in Lieu of Oral Arg. 3−4, he did not argue this before the Administrative Judge.  He alleged only that he was "not willing to compromise his personal integrity and public trust responsibility by placing his name on fraudulent [contractor] products as a condition of employment with FEMA."  *Board Decision* at 10; Resp. App. 56.  We consider this argument waived.[2]

Second, we see no error in the Administrative Judge's conclusions: that the project briefings were not a condition of employment and that Mr. McKeown failed to nonfrivolously allege that his supervisor's actions were coercive. *Board Decision* at 9−12.  Indeed, Mr. McKeown repeatedly refused to complete assigned briefings for the earthquake project and received an "unacceptable" performance rating for 2018, yet remained employed with no pending

[2]    And even if the argument was not waived, we find it objectively implausible for Mr. McKeown to fear personal legal liability for presenting a "fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), based on creating or presenting a project status update to internal FEMA stakeholders, especially when he had already reported his suspicions through formal channels.

disciplinary action when he resigned. And in 2019, the earthquake project presentation originally assigned to Mr. McKeown was reassigned to another employee.

Third, the fact that the Administrative Judge did not explicitly reference Mr. McKeown's April 2019 whistle-blower case was not error. An Administrative Judge need not explicitly address all of a petitioner's allegations or evidence in her opinion: Omission does not indicate a lack of consideration. *See Marques v. Dep't of Health & Human Servs.*, 22 M.S.P.R. 129, 132 (M.S.P.B. 1984) *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985). Regardless, the decision here reflects an understanding of the entire timeline of events, including Mr. McKeown's December 2016 and April 2019 complaints regarding the allegedly improper contractor work and billing.

Reviewing the record, we have no doubt that Mr. McKeown had a fraught working relationship with his direct supervisor and other FEMA Region IX administrators. However, a stressful working environment does not equate to coercion. *Brown v. U.S. Postal Serv.*, 115 M.S.P.R. 609, 616−17 (M.S.P.B. 2011) (reasoning that a finding of coercion was not supported by an appellant's allegations of, among other things, her supervisors' "increasing demands that she perceived as trying to cause her to fail" and "groundless[] critic[ism]" of her work); *Miller v. Dep't of Def.*, 85 M.S.P.R. 310, 322 (M.S.P.B. 2000) ("Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are generally not so intolerable as to compel a reasonable person to resign.").

We have considered Mr. McKeown's remaining arguments and find them unpersuasive. For the reasons explained above, we affirm the Board's decision.

**AFFIRMED**

No costs.