# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CHRISTINE COLE,
        Appellant,

      v.

DEPARTMENT OF THE TREASURY,
        Agency.

DOCKET NUMBER
PH-0752-17-0006-I-1

DATE: June 15, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Shaun Southworth, Esquire, and Terina Williams, Esquire, Atlanta,
    Georgia, for the appellant.

Andrew M. Greene, Esquire, and John F. Dymond, Esquire, Atlanta,
    Georgia, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed her involuntary retirement appeal for lack of jurisdiction. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

**BACKGROUND**

¶2      The appellant was a GS-11 Program Analyst with the agency's Internal Revenue Service's Small Business/Self-Employed (SBSE) field examination office in Baltimore, Maryland.  Initial Appeal File (IAF), Tab 9 at 12.  In April 2013, the appellant notified her manager that she was interested in obtaining a "Hardship/[Post-of-Duty (POD)] Transfer" to South Carolina.  IAF, Tab 10 at 58, 64.  The appellant's manager referred her to the agency's Hardship Coordinator (HC), who provided the appellant with information concerning hardship transfers.  *Id.* at 64-65.  After receiving this information, the appellant sent the HC an email asking, inter alia, whether she would be able to request a change in POD instead of a hardship transfer.  *Id.* at 64.

¶3      In response, the HC notified the appellant via email that she did not know "how a change in POD works" and that the appellant's manager would handle that matter.  *Id.* at 63.  The HC recommended that the appellant apply to the hardship program and have her manager work on changing her POD at the same time.  *Id.*

The HC also informed the appellant that she could withdraw from the hardship program if her manager succeeded in changing the appellant's POD.[2] *Id.*

¶4      On July 22, 2013, the appellant submitted Form 13442, "Application for Hardship Reassignment/Relocation Request," requesting a transfer to South Carolina because her husband had accepted a position there. *Id.* at 67-71. With her application, the appellant submitted a three-page statement entitled "Request for change in POD and/or Hardship Relocation," *id.* at 69-71, in which she asserted that she was requesting a "Hardship Relocation or a POD transfer," *id.* at 69.

¶5      By letter dated August 14, 2013, the HC notified the appellant that her hardship relocation application had been approved but cautioned that this approval did not mean that she had a job offer. *Id.* at 73. Rather, the HC explained, the appellant would be considered for future vacancies in her desired POD with the status of a hardship eligible. *Id.*

¶6      In September 2013, the appellant purchased a house in South Carolina and made arrangements to lease out her Baltimore home. *Id.* at 59. In October 2013, the SBSE was reorganized. *Id.* As a result, its Baltimore field examination office became part of a different region, and the appellant reported to a new chain of command. *Id.*

¶7      The appellant moved to South Carolina in December 2013 and was on annual leave the entire month. *Id.* at 19. When she returned to work, the agency informed her that there were no positions available for her in South Carolina and that she was required to report to Baltimore. *Id.* at 19, 125-26. Shortly thereafter, the appellant's union filed a grievance on her behalf. *Id.* at 53-62.

---

[2] In her email, the HC also advised the appellant as follows: "The hardship program is not a guarantee. You will be placed on a list and relocations are based on vacancies and selection. . . . I cannot supply any time frames [for the transfer] since it is not a guarantee that you will be placed." IAF, Tab 10 at 63.

The grievance was denied in March 2014, *id.* at 49-50, and the union declined to take the matter to arbitration, *id.* at 48.

¶8    During this time, the appellant was commuting from South Carolina to Baltimore. *Id.* at 132. In April 2014, the appellant requested a temporary telework agreement (TTA) to allow her time to move back to Baltimore. *Id.* at 131-33. The agency agreed to a 90-day TTA, which required the appellant to report to Baltimore 2 days each month. *Id.* at 23-24. The TTA began on June 10, 2014, and was repeatedly renewed because the appellant was having difficulty relocating to Baltimore. *Id.* at 23-32. In June 2015, the agency notified the appellant that her TTA, which was set to expire on June 30, 2015, would be extended through December 31, 2015; however, there would be no further extensions. *Id.* at 31-32; IAF, Tab 11 at 9.

¶9    The appellant submitted her retirement paperwork in September 2015 and was scheduled to retire on December 31, 2015. IAF, Tab 23 at 21. On December 21, 2015, the appellant sent an email to various agency officials claiming that she was being forced to retire and that the agency had discriminated against her based upon her age and disability (three herniated disks and arthritis in her back and knees). IAF, Tab 10 at 18-22. On December 28, 2015, the appellant's supervisor offered to extend the TTA 30 additional days to allow the agency time to review the issues raised in the email. IAF, Tab 7 at 95. The appellant declined this offer, *id.* at 96, and retired as scheduled, IAF, Tab 9 at 12.

¶10    The appellant then filed an equal employment opportunity (EEO) complaint alleging discrimination based on her age and disability and retaliation for her prior EEO activity. *Id.* at 13-19. On August 31, 2016, the agency issued a final decision finding no discrimination and notifying the appellant of her right to file a mixed-case appeal with the Board. IAF, Tab 7 at 109-17.

¶11    The appellant timely filed an alleged involuntary retirement appeal with the Board and requested a hearing. IAF, Tab 1 at 2, 4. The appellant alleged that her retirement was involuntary because it was the result of age discrimination,

disability discrimination based on failure to accommodate, and reprisal for protected EEO activity. *Id.* at 6, 13; IAF, Tab 26 at 4.

¶12 The administrative judge issued an order that informed the appellant of her burden of proving the Board's jurisdiction over her alleged involuntary retirement claim and directed her to file evidence and argument that her retirement was involuntary because of duress, coercion, or misrepresentation by the agency. IAF, Tab 2. Both parties filed responses to the order. IAF, Tabs 7, 13. After reviewing the parties' submissions, the administrative judge determined that the appellant had made a nonfrivolous allegation of Board jurisdiction sufficient to entitle her to a hearing on the jurisdictional issue. IAF, Tab 14.

¶13 After holding a hearing, the administrative judge determined that the appellant failed to prove that her retirement was involuntary and issued an initial decision that dismissed the appeal for lack of jurisdiction. IAF, Tab 36, Initial Decision (ID). The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response in opposition to the petition. PFR File, Tab 3.

## ANALYSIS

<u>The administrative judge correctly found that the appellant failed to prove that her retirement was the product of misinformation.</u>

¶14 Generally, the Board lacks the authority to review an employee's decision to retire, which is presumed to be a voluntary act. *Brown v. U.S. Postal Service*, [115 M.S.P.R. 609](#), ¶ 9, *aff'd*, 469 F. App'x 852 (Fed. Cir. 2011). An involuntary retirement is tantamount to a removal, however, and is therefore subject to the Board's jurisdiction. *Vitale v. Department of Veterans Affairs*, [107 M.S.P.R. 501](#), ¶ 17 (2007). An appellant may overcome the presumption of voluntariness by showing that her retirement was the product of misinformation or deception by the agency or of coercive acts by the agency, such as intolerable working conditions or the unjustified threat of an adverse action. *SanSoucie v. Department of Agriculture*, [116 M.S.P.R. 149](#), ¶ 14 (2011). The Board addresses

allegations of discrimination and reprisal in connection with an alleged involuntary retirement only insofar as those allegations relate to the issue of voluntariness and not whether they would establish discrimination or reprisal as an affirmative defense. *Vitale*, 107 M.S.P.R. 501, ¶ 20. The touchstone of the voluntariness analysis is whether, considering the totality of the circumstances, factors operated on the employee's decision-making process that deprived her of freedom of choice. *Searcy v. Department of Commerce*, 114 M.S.P.R. 281, ¶ 12 (2010).

¶15 An appellant may establish involuntariness on the basis of misinformation by showing that the agency provided misinformation upon which she reasonably relied to her detriment. *Paige v. U.S. Postal Service*, 106 M.S.P.R. 299, ¶ 9 (2007). On appeal, the appellant claimed that her retirement was involuntary because the agency informed her that her POD transfer to South Carolina had been approved but then notified her that it had not been approved after she had relocated to South Carolina in reliance on the agency's misrepresentations. IAF, Tab 7 at 6-7.

¶16 The administrative judge rejected this argument, finding that the appellant failed to show that the agency misled her. ID at 10-16. The administrative judge noted that the record did not contain any official documentation confirming the agency's approval of her POD transfer. ID at 11, 13-14. Instead, the only official agency documentation approving the appellant's transfer request was the letter approving her application for a hardship transfer, which expressly stated that such approval was not a current offer of employment but that she would be considered for future vacancies in her desired POD if an appropriate position became available there. ID at 10-11; IAF, Tab 10 at 73. The administrative judge found that no one could reasonably rely on the approval of the hardship transfer application to make an immediate move to the desired POD. ID at 11.

¶17 The administrative judge also found that, not only was there no official agency documentation showing that the appellant's POD transfer had been

approved, but there was also no testimony corroborating the appellant's claim that the agency had misrepresented to her that her POD transfer had been approved. ID at 13. In that regard, the administrative judge noted that, although he had approved as a witness the appellant's former manager (i.e., her immediate supervisor prior to the SBSE reorganization), the appellant chose not to call her as a witness,[3] nor did she request as witnesses any other agency personnel that purportedly approved her POD transfer. ID at 13 n.13; IAF, Tab 26 at 12-13, Tab 33 at 4.

¶18     The administrative judge further found that, even if the agency did provide the appellant with misinformation, it was "not a likely trigger" for her retirement, as the misinformation was provided 2 years before she retired and she had the opportunity to make specific choices in the interim. ID at 15-16 (citing *Shoaf v. Department of Agriculture*, 260 F.3d 1336, 1342 (Fed. Cir. 2001) (stating that while an action significantly preceding the purported involuntary action may well be relevant, incidents closer in time are likely more relevant)). Accordingly, the administrative judge concluded that the appellant's arguments that her retirement was involuntary due to misinformation were not persuasive. ID at 9.

¶19     On review, the appellant alleges that the administrative judge improperly discounted numerous accounts of misinformation by the agency, and she asserts that "[m]uch evidence" suggests that the agency misled her into believing that her POD transfer had been approved. PFR File, Tab 1 at 6. In support of this claim, the appellant cites various emails from agency personnel. *Id.* at 6-8; IAF, Tab 10 at 75-76, 78-79. We have reviewed these emails and find that, with the exception of an August 21, 2013 email from the appellant's former manager to a Facilities

---

[3] The administrative judge noted that the appellant's former manager could have corroborated the appellant's allegation that she mistakenly believed that the appellant's POD transfer had been approved and conveyed that incorrect information to the appellant. ID at 13.

Project Specialist (FPS) for the agency, which we discuss further below, none of the emails misrepresented that the appellant's POD transfer had been approved.[4]

¶20     We also find unavailing the appellant's argument on review that, by instructing the appellant to use the hardship transfer form to request a POD transfer, the HC misled her into thinking that she was filing a POD transfer request. PFR File, Tab 1 at 11. Although the appellant contends that her request was for a POD transfer and not a hardship transfer, this claim is contradicted by the statement that she submitted with her transfer application, in which she explicitly asserted that she was requesting a hardship transfer or a POD transfer. IAF, Tab 7 at 5, Tab 10 at 70, 127, Tab 27 at 88. In any event, even if the appellant believed that she was requesting only a POD transfer when she submitted the application form, the August 14, 2013 approval letter clearly stated that she had been approved for a hardship transfer and that such a transfer was contingent on the availability of a vacancy in her desired POD. IAF, Tab 10 at 73. Thus, even assuming arguendo that the HC misled the appellant into believing that she was making a POD transfer request via the hardship transfer form, given the clear language of the approval letter, it was not reasonable for her to believe that she had been approved for a POD transfer.

¶21     In our view, the strongest evidence in support of the appellant's claim that agency officials misled her into believing that the agency had approved a POD transfer is the aforementioned August 21, 2013 email from the appellant's former

---

[4] For example, the appellant alleges that the FPS misled her into believing that her POD transfer had been approved because the FPS's email response to the appellant's former manager's email stating that she had approved the appellant's POD transfer request and asking him whether he would be involved in the appellant's relocation did not mention "job vacancies" but merely advised the appellant's former manager how best to coordinate the move. PFR File, Tab 1 at 7; IAF, Tab 10 at 78. Significantly, however, the FPS was responding to the manager's email stating that the appellant had received approval for a POD transfer, and he had no reason to know that she instead had received approval for a hardship transfer that was contingent on the availability of a vacancy in the appellant's desired POD. IAF, Tab 10 at 79. Thus, we find that the FPS's email was not misleading.

manager to the FPS. IAF, Tab 10 at 79. In the email, which contains the subject line "POD Relocation," the manager states that an employee in Baltimore requested a POD transfer to Columbia, South Carolina, and that she and her manager approved the request. *Id.* The appellant argues that, based on the language acknowledging the approval of the POD transfer, she reasonably believed that a POD transfer had been approved. PFR File, Tab 1 at 6-7.

¶22    Although the appellant's former supervisor incorrectly states in her email that she and her manager approved the appellant's POD transfer request, for an appellant to establish that her retirement was involuntary on the basis of agency-supplied misinformation, she must not only show that the agency misinformed her but also that she reasonably relied on that misinformation. *Paige*, 106 M.S.P.R. 299, ¶ 9. Based on our review of the record, we find that the appellant failed to meet this standard. As previously noted, the August 14, 2013 hardship transfer approval letter explicitly informed the appellant that she had been approved for a hardship transfer and that such a transfer was contingent on the availability of a vacancy in her desired POD. IAF, Tab 10 at 73. Also, prior to receiving the hardship approval letter, the appellant was warned at least twice that approval for a hardship transfer did not guarantee that a transfer would occur. First, as noted above, in her April 18, 2013 email addressing the appellant's questions about applying for a transfer, the HC stated that approval of a hardship transfer request was no guarantee that she would receive a transfer and that relocations were based on vacancies and selection. *Id.* at 63. Second, the record indicates that the appellant signed a Hardship Reassignment Checklist on July 29, 2013, which states as follows: "Placement by the hardship reassignment process is not guaranteed. It is driven entirely on when a vacancy is available in the requested POD." *Id.* at 56.

¶23    Moreover, as noted by the administrative judge, on September 10, 2013, i.e., about 3 weeks after the appellant's former manager's email to the FPS stating that the appellant's POD transfer request had been approved, the appellant sent an

email to a friend complaining that there were problems with her transfer and that no one, including her manager, knew the requirements for effecting the transfer. ID at 13; IAF, Tab 10 at 101. The administrative judge found, and we agree, that this email suggests that the appellant was aware that her transfer was not a certainty before she purchased a house in South Carolina and moved there. ID at 13. Considering the totality of the circumstances, we find that, although the appellant's former supervisor's email was arguably misleading, the appellant did not establish by preponderant evidence that she reasonably relied upon agency-supplied misinformation. Accordingly, based on our review of the record, we see no reason to disturb the administrative judge's finding that the appellant failed to prove that her retirement was involuntary based on misinformation. ID at 10-16.

<u>The administrative judge correctly found that the appellant's retirement was not involuntary based on a failure to accommodate.</u>

¶24    We also agree with the administrative judge that the appellant failed to prove that she was forced to retire because the agency failed to accommodate her disability.[5] ID at 16-20. A retirement may be rendered involuntary when an agency improperly denies an employee's request for a reasonable accommodation of her disability. *See Hosozawa v. Department of Veterans Affairs*, 113 M.S.P.R. 110, ¶ 7 (2010). The administrative judge found that the appellant never requested an accommodation, either expressly or implicitly, and never initiated the accommodation process even though she was familiar with it. ID at 20. In support of this finding, the administrative judge noted that the appellant testified that, although she was familiar with the formal accommodation process because

---

[5] As the administrative judge noted in the initial decision, it is undisputed that the appellant was a qualified individual with a disability (three herniated disks in her back and arthritic knees) and that she had applied for and received an accommodation from the agency in 2011 (a pass that allowed the appellant to access the Baltimore facility through an alternate entrance and thereby avoid climbing the stairs at the main entrance). ID at 2; IAF, Tab 10 at 141, Tab 26 at 5, Tab 27 at 5-6.

she previously had requested and received an accommodation, she never asked anyone at the agency for an accommodation of her disability based on the situation involving her transfer request, nor did she view the temporary TTAs as accommodations for her disability. ID at 16 (citing IAF, Tab 35, Hearing Compact Disc (testimony of the appellant)).

¶25    The appellant challenges this finding on review, arguing that she made repeated requests for telework or other accommodations because of her disability; however, management intentionally chose not to engage in the interactive process. PFR File, Tab 1 at 8. This argument is completely at odds with the appellant's testimony that she never asked anyone in the agency for a reasonable accommodation for her disability during the relevant time period. Further, the documentary evidence in the record shows that the appellant's requests for telework or other accommodations were not based on her disability. Rather, as previously discussed, the appellant initially requested temporary telework to allow her time to move back to Baltimore. IAF, Tab 10 at 131-33. Similarly, the appellant's subsequent requests for telework or other accommodations were based on her alleged difficulty relocating to Baltimore for various reasons unrelated to her disability, such as problems evicting her tenant in Baltimore and difficulty selling or renting her house in South Carolina. *Id.* at 20, 23-32.

¶26    The administrative judge also considered the appellant's argument, which she reiterates on review, that the agency should have known that she needed an accommodation because agency officials were aware that she had a disability and was having difficulty with the commute to Baltimore. ID at 9, 17-18; IAF, Tab 27 at 75; PFR File, Tab 1 at 10-11. Specifically, the appellant contends that the agency had an obligation to initiate the interactive process because her supervisor was aware that she had a physical disability for which she had received an accommodation in 2011 and therefore should have been aware of the connection between her physical limitations and the problems she was having with her commute, particularly in light of a February 2014 note from her doctor,

which recommended that the appellant avoid train travel because prolonged sitting and lifting her luggage aggravated her back pain. PFR File, Tab 1 at 10-11; IAF, Tab 7 at 37.

¶27     The administrative judge rejected this argument, finding that the appellant's prior accommodation had no conceivable relationship to her subsequent circumstances. ID at 17. Regarding the appellant's contention that her supervisors should have been aware of the connection between her disability and her difficulty with the commute, the administrative judge noted that, while her supervisors acknowledged that the commute was difficult for her, a commute of more than 500 miles would be problematic for anyone. *Id.*

¶28     The administrative judge also found that the February 6, 2014 note from the appellant's doctor was not an implicit request to begin the interactive process. ID at 18. In making this finding, the administrative judge credited the appellant's supervisor's testimony that the appellant submitted this note in support of her request for 80 hours of sick leave over the appellant's testimony that the purpose of the note was not so limited. *Id.* The appellant has shown no reason to disturb the administrative judge's credibility findings. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so). Thus, we agree with the administrative judge that the appellant did not show that her retirement was involuntary because the agency failed to accommodate her disability.

The administrative judge correctly found that the appellant failed to prove that her retirement was involuntary based on coercion.

¶29     The appellant also alleged that the agency coerced her retirement by requiring her to commute from Columbia, South Carolina, to Baltimore. IAF, Tab 26 at 9-10. To establish involuntariness on the basis of coercion, an

employee must show that the agency effectively imposed the terms of her retirement, she had no realistic alternative but to retire, and her retirement was the result of improper acts by the agency. *Staats v. U.S. Postal Service*, 99 F.3d 1120, 1124 (Fed. Cir. 1996). The doctrine of coerced involuntariness is "a narrow one" and does not apply if the employee retires because she "does not want to accept [measures] that the agency is authorized to adopt, even if those measures make continuation in the job so unpleasant . . . that [s]he feels that [s]he has no realistic option but to leave." *Id.* "[T]he fact that an employee is faced with an unpleasant situation or that [her] choice is limited to two unattractive options does not make [her] decision any less voluntary." *Id.*

¶30      Here, the administrative judge found that the appellant had at least three choices as of December 31, 2015:  (1) to retire or find another job; (2) to sell or rent her South Carolina home and move back to her Baltimore home; and (3) to travel to Baltimore from Columbia to work 2 or 3 days each week.  ID at 21.  The administrative judge found that, although the appellant did not find any of these options palatable, her retirement was voluntary because she had a choice as to whether to retire.  *Id.*; *see Staats*, 99 F.3d at 1123 (finding that the fact that the petitioner "perceived his situation to be an unpleasant one because he did not wish to relocate . . . does not make his decision to retire . . . involuntary").

¶31      The appellant challenges this finding on review, arguing that the evidence does not support the administrative judge's conclusion that she had alternatives to retirement available.  PFR File, Tab 1 at 13.  In particular, the appellant contends that she was forced to retire because relocating to Baltimore "was not realistic" due to the cost of moving and the financial consequences of terminating the lease on her Baltimore property early.  *Id.*

¶32      This argument is unavailing.  Although the appellant claims she was forced to retire because relocating to Baltimore was too expensive, she had the option of selling or renting her South Carolina home, which would have lessened the financial burden of moving back to Baltimore.  Further, the appellant's retirement

was not the result of improper acts by the agency. Rather, as the administrative judge noted, the appellant's circumstances were self-imposed, given that she moved to South Carolina without first securing a proper transfer. ID at 17. Accordingly, we agree with the administrative judge that the appellant failed to prove that her retirement was involuntary, and we affirm the initial decision.

## NOTICE OF APPEAL RIGHTS[6]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* <u>42 U.S.C. § 2000e-5</u>(f) and <u>29 U.S.C. § 794a</u>.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

<u>http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx</u>.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  <u>5 U.S.C. § 7702</u>(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  <u>5 U.S.C. § 7702</u>(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                     /s/ for
                                   _____
                                   Jennifer Everling
                                   Acting Clerk of the Board
Washington, D.C.