**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| TERRY D. PARCHMAN, | DOCKET NUMBER |
| Appellant, | SF-0752-18-0669-I-1 |
| v. | |
| DEPARTMENT OF DEFENSE, | DATE:  February 14, 2024 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Larry J. Stein, Esquire, and Rosa M. Koppel, Esquire, Fairfax, Virginia, for the appellant.

Jennifer Kehe, Esquire, APO, APO/FPO Pacific, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

The agency has filed a petition for review of the initial decision, which reversed the appellant's constructive removal.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to find that the appellant was not constructively removed based on misinformation, we AFFIRM the initial decision.

## BACKGROUND

The appellant is a retired U.S. Marine Corps major. Initial Appeal File (IAF), Tab 6 at 34, 75. On February 13, 2016, the agency appointed him to the excepted service position of Junior Reserve Officer Training Corps (JROTC) Senior Marine Instructor at Matthew C. Perry High School in Japan. IAF, Tab 6 at 34, Tab 20 at 14. As Senior Marine Instructor, the appellant was responsible for all aspects of Perry High School's JROTC program, including classroom instruction, administrative functions, outreach, and extracurricular activities. IAF, Tab 6 at 135. He was assisted in his duties by a junior Marine Instructor, a retired master sergeant. IAF, Tab 4 at 173-74, Tab 6 at 37, 135. The appellant's first-level supervisor was the principal of the high school, and his second-level supervisor was the Marine Corps JROTC Regional Director, stationed in Quantico, Virginia. IAF, Tab 5 at 16. Around the end of the 2016-2017 school year, on June 9, 2017, the appellant submitted a letter of resignation, stating that he was resigning his position effective June 16, 2017, in order to relocate to be

with his wife and attend graduate school. IAF, Tab 4 at 105, Tab 6 at 90. The agency effected the appellant's resignation accordingly.[2] IAF, Tab 5 at 25.

On October 17, 2017, the appellant filed a formal equal employment opportunity (EEO) complaint, claiming that his resignation was involuntary because of intolerable working conditions based on race discrimination and reprisal for engaging in EEO activity. *Id*. at 13-15. On May 23, 2018, the agency issued a final decision finding no discrimination. *Id*. at 15-23. The appellant then filed the instant Board appeal, asserting a constructive removal claim based on intolerable working conditions, and arguing that the agency's actions were motivated by race discrimination and retaliation for EEO activity.[3] IAF, Tab 1 at 3, 5. He did not request a hearing. *Id*. at 2.

After the close of the record, the administrative judge issued an initial decision finding that the appellant established a constructive removal claim within the Board's jurisdiction and reversing the agency's action. IAF, Tab 21, Initial Decision (ID) at 1, 6-15, 18. Nevertheless, he found that the appellant failed to prove his claims of discrimination and retaliation. ID at 15-18.

The agency has filed a petition for review, challenging the administrative judge's fact findings and credibility determinations with respect to the voluntariness of the appellant's resignation.[4] Petition for Review (PFR) File, Tab 1. The appellant has filed a response in opposition to the petition for review,

---

[2] The administrative judge found that, at the time of his resignation, the appellant was an employee with chapter 75 appeal rights under 5 U.S.C. § 7511(a)(1)(B)(1). IAF, Tab 17 at 1. This finding is supported by the record, IAF, Tab 5 at 25, Tab 20 at 14, and the agency does not dispute it.

[3] There was a question regarding the timeliness of the appeal. IAF, Tab 1 at 3, Tab 7; *see* 5 C.F.R. § 1201.154(b). The administrative judge ultimately found that the appeal was untimely by 1 day, but he waived the filing deadline for good cause shown. IAF, Tab 21 at 3-6; *see* 5 C.F.R. § 1201.22(c). The agency has not challenged the administrative judge's analysis of this issue, and we see no reason to disturb it.

[4] The administrative judge ordered interim relief in this appeal. ID at 19-20. The agency has certified compliance with the interim relief order as required by 5 C.F.R. § 1201.116(a), and the appellant has not challenged the agency's certification.

and the agency has filed a reply to the appellant's response. PFR File, Tabs 5, 8. The appellant has also moved for leave to file additional evidence concerning an EEO complaint filed by the Perry High School assistant principal. PFR File, Tab 6. The agency opposes the appellant's motion. PFR File, Tab 9.

## ANALYSIS

Employee-initiated actions are presumed to be voluntary, and the Board lacks jurisdiction over voluntary actions. *Polen v. Department of Defense*, 72 M.S.P.R. 1, 5 (1996). However, employee-initiated actions that appear voluntary on their face are not always so, and the Board may have jurisdiction over such actions under 5 U.S.C. chapter 75 as "constructive" adverse actions. *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 7 (2013). All constructive adverse actions have two things in common: (1) the employee lacked a meaningful choice in the matter; and (2) it was the agency's wrongful actions that deprived the employee of that choice. Assuming that the jurisdictional requirements of 5 U.S.C. chapter 75 are otherwise met, proof of these two things is sufficient to establish Board jurisdiction. *Id.*, ¶ 8.

In this case, the administrative judge found that the appellant's resignation was involuntary for two independent reasons, namely the appellant's assistant Marine Instructor created intolerable working conditions that the agency refused to correct, and the principal's secretary misinformed the appellant that he could not go on leave without pay (LWOP) to attend graduate school and move in with his wife. ID at 6-15. Intolerable working conditions and misinformation are two recognized bases for finding a constructive adverse action. *Salazar v. Department of the Army*, 115 M.S.P.R. 296, ¶ 12 (2010); *Heining v. General Services Administration*, 68 M.S.P.R. 513, 520 (1995). We address both theories of the case, beginning with intolerable working conditions.

In his initial decision, the administrative judge found that, throughout the appellant's tenure as Senior Marine Instructor, the assistant Marine Instructor

rendered his working conditions intolerable, and the agency failed to remedy the situation despite the appellant's requests. ID at 7-13. He found that both the principal and the Regional Director notified the appellant that he would be fired and not recertified if he and the Marine Instructor could not resolve their differences without management assistance. *Id*. After receiving a performance appraisal that contained a negative remark about his relationship with the Marine Instructor, the appellant informed the principal of his intent to resign, and he felt that the principal then hurried him to tender his resignation. ID at 9; IAF, Tab 20 at 83-84. The appellant acknowledged that his resignation letter did not mention intolerable working conditions, but he stated that this was because his union representative advised him against it. ID at 9-10. In addition to the appellant's account of things, the administrative judge considered declarations and other statements from the Marine Instructor, the principal, the assistant principal, and the Regional Director, all of which corroborated the appellant's account to varying degrees. ID at 10-12.

Considering the evidence as a whole, the administrative judge found that the appellant's working conditions were so difficult that a reasonable person in his position would have felt compelled to resign. ID at 12. He further found that the principal failed to address the situation adequately because he sought to discipline both the Marine Instructor and the appellant even though he failed to identify anything that the appellant did wrong. ID at 13.

On petition for review, the agency contests the administrative judge's analysis on several fronts, beginning with his credibility determinations. PFR File, Tab 1 at 13-18. We have considered the agency's arguments, but in light of the factors set forth in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), we find insufficient basis to discount any of the material statements made by the appellant, the assistant principal, or the Regional Director. In any event, witness credibility is not a major issue in this case. Having reviewed the appellant's notes, the witness declarations, and the EEO interview summaries, we

find that the factual statements from all of the witnesses are generally consistent with one another. IAF, Tab 4 at 43-46, 162-85, Tab 6 at 81-90. The most notable exception is the Marine Instructor, who acknowledged his difficult relationship with the appellant but downplayed its seriousness and contended that these difficulties were the appellant's fault. IAF, Tab 4 at 45, 173-75. However, we find that the weight of the evidence shows that the Marine Instructor was chiefly, if not solely, to blame for these problems; all of the other witnesses agreed that the appellant was supposed to be in charge, but that the Marine Instructor refused to defer to him and refused to work on making the situation better.[5] *Id*. at 44-46.

Turning to the agency's arguments about the merits of the case, it argues that the principal did, in fact, take steps to address the appellant's concerns about his relationship with the Marine Instructor. PFR File, Tab 1 at 18-19, 23. We agree. The record shows that the principal met with or attempted to meet several times with the appellant and the Marine Instructor to work on their professional relationship. IAF, Tab 6 at 85, 88-89. However, the record also shows that these meetings were ineffective. The first meeting occurred on September 30, 2016, between the appellant, the principal, the assistant principal, and the Marine Instructor. *Id*. at 85. The meeting was tense, but the appellant and the Marine Instructor had lunch together and talked cooperatively afterwards. *Id*. This cooperation did not last, and on January 26, 2017, the principal called another meeting between himself, the appellant, the Marine Instructor, and a union representative. *Id*. at 88. The Marine Instructor failed to appear at the meeting, and the principal appeared to be "agitated" by this, but there is no indication that he did anything about it. *Id*. Instead, he informed the appellant that both his and the Marine Instructor's jobs were on the line if they could not figure out how to get along. *Id*. The next meeting was scheduled for February 13, 2017, between the principal, the appellant, the union representative, the Marine Instructor, and

---

[5] The principal opined that the appellant and the Marine Instructor were equally culpable for their contentious relationship, but he offered no factual basis to support his opinion. IAF, Tab 4 at 168.

the Regional Director. *Id*. The Marine Instructor again failed to appear, stating that he desired legal representation.[6] *Id*. There is no evidence that either the principal or the Regional Director did anything to address this act of insubordination. Finally, there was a meeting on March 22, 2017, between the principal, the assistant principal, the appellant, the Marine Instructor, and a union representative. *Id*. at 89. It is not exactly clear what transpired at the meeting, but the record shows that the appellant and the Marine Instructor got along and communicated well for at least the next couple of days. *Id*. The agency attempts to put a positive spin on this series of meetings, PFR File, Tab 1 at 18-19, but we find that they highlight the principal's failure to take decisive action to improve the appellant's working conditions.

The agency also faults the administrative judge for considering in his voluntariness analysis the appellant's June 15 and 16, 2017 meetings with the principal concerning his annual performance appraisal because these matters occurred after the appellant tendered his resignation on June 9, 2017. PFR File, Tab 1 at 20; ID at 9. We disagree. Although the appellant tendered his resignation letter on June 9, 2017, he specified that his final day of work would be June 16, 2017. IAF, Tab 4 at 105. It is well settled that, absent a "valid reason" such as detrimental reliance by the agency, an employee may withdraw his resignation at any time up until its effective date. *Gibson-Meyers v. Veterans Administration,* 13 M.S.P.R. 363, 364 (1982); 5 C.F.R. § 715.202(b). Therefore,

---

[6] The appellant was covered by a collective bargaining agreement, so it seems likely that the Marine Instructor was as well. IAF, Tab 5 at 11. Nevertheless, there is no indication that this meeting was investigatory in nature, and it therefore does not appear that the Marine Instructor would have been entitled to union representation under 5 U.S.C. § 7114(a)(2)(B). The right of representation arises when a significant purpose of the interview is to obtain facts to support disciplinary action that is probable or that is being seriously considered. When a meeting is nothing more than a pure counseling session and remedial in nature, without the requisite investigatory element, it does not qualify as an "examination of an employee . . . in connection with an investigation." *U.S. Department of the Treasury, Internal Revenue Service*, 8 FLRA 324, 330 (1982). Moreover, it appears that there was, in fact, an appropriate union representative present at the meeting. IAF, Tab 6 at 88.

although the appellant tendered his resignation on June 9, he presumably could have changed his mind had the performance meetings of June 15 and 16 gone differently. However, these meetings only confirmed to the appellant that the principal continued to blame him for his problems with the Marine Instructor. IAF, Tab 20 at 83-84.

Regarding the appellant's working conditions themselves, the agency argues that they were not so difficult that a reasonable person in his position would have felt compelled to resign. PFR File, Tab 1 at 20-23. In this regard, it argues that the appellant's relationship with the Marine Instructor had actually improved by the time of his resignation. It asserts that the last negative interaction recorded in the appellant's notes was on January 25, 2017, which was nearly 5 months before the appellant resigned. PFR File, Tab 1 at 23; IAF, Tab 6 at 88. This is inaccurate. Entries from January 26, February 13, March 15, and March 20, 2017, reflect further negative interactions with the Marine Instructor. IAF, Tab 4 at 88. Furthermore, it appears that other ongoing issues continued throughout the relevant time period unabated. *Id.* at 45. It does appear that the appellant's relationship with the Marine Instructor became less volatile after January 2017, and we agree with the agency that this might tend to undercut the appellant's allegations of involuntary resignation in June. *See Miller v. Department of Defense,* 85 M.S.P.R. 310, ¶ 10 (2000) (finding that circumstances immediately prior to the date of the resignation are most relevant in determining the issue of voluntariness). Nevertheless, the Board takes a totality of the circumstances approach to this issue, *Lentz v. Merit Systems Protection Board,* 876 F.3d 1380, 1384-86 (2017), and under the particular circumstances of this case, we find it appropriate to consider the fact that the end of the school year was a more suitable time for the appellant to tender his resignation than at the height of his contention with the Marine Instructor several months prior, *see Heining,* 68 M.S.P.R. at 521 (finding that the issue of whether a resignation was involuntary depends on the circumstances of each individual case). We will not

penalize the appellant for persevering to see through his commitment for the 2016-2017 school year. Moreover, the record shows that immediately prior to his resignation, the appellant received confirmation from both the principal and the Regional Director that they would not support him in asserting his leadership role the following year. IAF, Tab 4 at 46, Tab 6 at 89-90, Tab 20 at 83. Considering the totality of the circumstances, we find that the timing of the appellant's resignation is consistent with his claim of involuntariness.

The agency further argues that the appellant's working conditions, although perhaps unpleasant, were not so difficult that a reasonable person in his position would have felt compelled to resign. It argues that the appellant and the Marine Instructor had "issues" working with one another, but the incidents cited by the administrative judge do not constitute intolerable working conditions under an objective standard. PFR File, Tab 1 at 21; *see Staats v U.S. Postal Service*, 99 F.3d 1120, 1124 (Fed. Cir. 1996) ("The test for involuntariness is objective.").

We disagree. The record in this appeal is clear that, as the Senior Marine Instructor, the appellant was in charge of the Perry High School JROTC program, and the Marine Instructor was supposed to work for him. IAF, Tab 4 at 43, 46, 143. Although the record is insufficient for us to determine whether the appellant could be considered the Marine Instructor's "supervisor" as that term is commonly used, *see generally* 5 U.S.C. § 7103(a)(10) (defining the term "supervisor" for purposes of the Federal Labor Relations Act), it is undisputed that the appellant was responsible for taking the lead in JROTC matters. IAF, Tab 4 at 143. But it does not appear that the appellant had any actual authority to discipline the Marine Instructor; had he any such authority, we have little doubt that he would have exercised it. Rather, we find that the appellant was in the untenable position of having to depend on his own superiors, who were entirely indifferent to the appellant and his leadership responsibilities, to exert the authority necessary to bring the Marine Instructor into line. Rather than backing the appellant up in any meaningful way, they sought to discipline him for his

"inability to get along" with a subordinate who bucked his authority at every turn. IAF, Tab 4 at 44, 46, 168.

The Board has long stressed the importance that proper respect and deference to supervisors has in the Federal workplace:

> Insolent disrespect toward supervisors so seriously undermines the capacity of management to maintain employee efficiency and discipline that no agency should be expected to exercise forbearance for such conduct more than once. To expect management to tolerate appellant's repeated insolent behavior would make a mockery of management's authority and supervisory responsibility; few other types of misconduct go so directly to the heart of maintaining the "efficiency of the service."

*Jefferson v. Veterans Administration*, 6 M.S.P.R. 348, 352 (1981). Clearly though, the agency in this case expected the appellant to tolerate the Marine Instructor's insolent disrespect and insubordination indefinitely. The appellant himself was powerless to do anything about it, and the only individuals who could do anything about it did not want to be bothered, to the point where the principal threatened to terminate the appellant if he continued seeking help from him, and the Regional Director recommended that both the appellant and the Marine Instructor be "let go" and decertified without differentiation.[7] IAF, Tab 4 at 44, 46, Tab 6 at 89. It bears repeating that the agency failed to identify anything that the appellant did that would warrant discipline. ID at 13. In sum, the appellant was attempting to manage a JROTC program and maintain a military bearing and air of authority while being actively undermined in front of the students, parents, and staff by the Marine Instructor who was supposed to be there to help him. We do not see how the appellant could possibly be expected to

---

[7] We acknowledge that the appellant may not have sought all potential forms of redress before resigning. For example, it appears that he could have but declined to file a grievance. IAF, Tab 5 at 11. However, considering the appellant's lack of employee status during most of the period at issue, along with the principal's threats to fire him if he did not address his working conditions on his own, we find that it would still not have been unreasonable for the appellant to conclude that resignation was the only realistic alternative to his intolerable working conditions. *See Heining v. General Services Administration*, 61 M.S.P.R. 539, 554 (1994).

perform under these conditions. We find that, this appeal is more akin to *Bates v. Department of Justice*, 70 M.S.P.R. 659, 667-71 (2000), in which the Board found that the appellant's resignation was involuntary because she was receiving daily harassment that directly interfered with her ability to do her job.

The agency also argues that the real reason for the appellant's resignation was his desire to relocate and be with his wife. PFR File, Tab 1 at 23-24, 26. In support of its argument, the agency cites various documents from June 2017, in which the appellant stated that he was resigning to relocate with his wife. PFR File, Tab 1 at 23-24; IAF, Tab 4 at 105, 111, 147, 151-52. However, this evidence must be weighed against the appellant's discussion with the Regional Director in May 2017, that his working conditions were bad and he was ready to resign if nothing was done about the Marine Instructor, as well as an email that the appellant sent to the Regional Director in June 2017, stating that his working conditions had made continued employment intolerable. IAF, Tab 4 at 46, 184. The appellant attributes this conflicting evidence to advice that he received not to end his employment amid a flurry of complaints. IAF, Tab 4 at 163, Tab 16. We find that the appellant's explanation is entirely plausible, and that the agency has not offered a more plausible explanation to resolve this discrepancy. We therefore credit the appellant's statement that he resigned due to his working conditions and not due to his desire to relocate. The fact that an employee makes plans for the future before resigning his position does not rebut his statements about the reasons for his resignation. *See Bates*, 70 M.S.P.R. at 671.

For the reasons discussed above, we agree with the administrative judge that the appellant proved by preponderant evidence that he lacked a meaningful choice in his resignation and that it was the agency's wrongful actions that deprived him of that choice. *See Bean*, 120 M.S.P.R. 397, ¶ 8. The appellant's working conditions were intolerable, and the agency knew about them but did nothing to help. *See Peoples v. Department of the Navy*, 83 M.S.P.R. 216, ¶¶ 7-8 (1999). Worse than that, the agency threatened to separate the appellant from

service if he continued to seek help rather than resolve the problem on his own, which as a practical matter he lacked the authority to do. We therefore agree with the administrative judge that the appellant was constructively removed as a result of intolerable working conditions. ID at 6-13.

We disagree, however, with the administrative judge's alternative finding that the appellant's resignation was involuntary due to misinformation. ID at 13-15. A resignation may be tantamount to a constructive removal if the agency made misleading statements upon which the employee reasonably relied to his detriment. *Scharf v. Department of the Air Force*, 710 F.2d 1572, 1574-75 (Fed. Cir. 1983). In this case, the administrative judge found, and it appears to be undisputed, that the appellant approached the principal's secretary to inquire about the possibility of taking LWOP to accompany his civilian employee spouse and attend graduate school, but the secretary told him that he was not entitled to LWOP. ID at 13-14; IAF, Tab 4 at 98, 163. It also appears to be undisputed that the secretary's advice was incorrect; Department of Defense Dependents Schools Regulation 5630.4 specifically provides that extended LWOP may be granted, at management's discretion, both for education and for accompanying a Government employee spouse to a new duty location. ID at 14; IAF, Tab 20 at 77. Finally, it appears to be undisputed that the appellant would have taken extended LWOP rather than resign had the secretary not told him that he was ineligible for LWOP.[8] ID at 14-15.

Nevertheless, the agency argues that the appellant's reliance on the secretary's advice was not reasonable. PFR File, Tab 1 at 25-26. We agree. *See Lovings v. Department of the Army*, 28 M.S.P.R. 5, 6 (1984) (finding that the appellant's reliance on her supervisor's advice to accept a demotion and

[8] We do not purport to find that the appellant would have been granted LWOP had he requested it through proper channels. Extended LWOP for the reasons that the appellant was seeking it is at management's discretion. IAF, Tab 20 at 77. However, under the facts of this case, whether management would have granted the appellant's request is immaterial to whether the agency constructively removed him through misleading information.

challenge it later was unreasonable under the circumstances). The appellant knew or should have known that the principal's secretary was not his supervisor or manager, and that she was not responsible for acting on his leave requests. A reasonable person in his position would not have accepted the secretary's unsubstantiated opinion as the final word on the matter but would instead have directed his inquiries to his supervisors or to a human resources official.

The appellant argues on review that, for various reasons, he acted reasonably by accepting the secretary's word that he was ineligible for LWOP. PFR File, Tab 5 at 19-20. We have considered the appellant's arguments, but we find no evidence that the principal's secretary was authorized to act on leave requests, or that the appellant was prevented from communicating directly with the principal or some other official who had such authority. The appellant has moved for leave to submit an agency final decision in the assistant principal's EEO case for the purpose of showing that that the principal communicated through the secretary, particularly with regard to administrative matters. PFR File, Tab 6. Having reviewed the appellant's proffer, we deny the motion. Even assuming that this evidence was previously unavailable despite the appellant's due diligence, we find that it would not be material to the outcome of the appeal. The fact that the principal frequently communicated through his secretary does not establish that the appellant's reliance on her mistaken advice was reasonable.

Nevertheless, despite the appellant's failure to prove constructive removal based on misinformation, he still proved constructive removal based on intolerable working conditions. *Supra* pp. 11-12. This action must be reversed for lack of due process. *See Drummonds v. Department of Veterans Affairs*, 58 M.S.P.R. 579, 584-85 (1993). Because the appellant has not challenged the administrative judge's analysis of his discrimination and reprisal claims, we will not revisit them here. *See* 5 C.F.R. § 1201.115 ("The Board normally will consider only issues raised in a timely filed petition or cross petition for review.").

**ORDER**

We ORDER the agency to cancel the appellant's resignation and to restore the appellant effective June 16, 2017. *See Kerr v. National Endowment for the Arts,* 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[9]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:          _____

                        *Gina K. Grippando*

                        Gina K. Grippando
                        Clerk of the Board

Washington, D.C.



| | DEFENSE FINANCE AND ACCOUNTING SERVICE |
|---|---|
| | **Civilian Pay Operations** |

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

<u>Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:</u>

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions (if applicable).
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's
Payroll/Personnel Operations at 504-255-4630.